**NATIONAL COMMODITY & BARTER ASSOCIATION, National Commodity Exchange, Plaintiffs,**

v.

**Lawrence R. GIBBS, et al., Defendants.**

**Civ. A. No. 87–S–500.**

United States District Court, D. Colorado.

Nov. 27, 1991.

234

William Allan Cohan, Cohan & Greene, Denver, Colo. and Jennifer A. Greene, Cohan & Greene, Encinitas, Cal., for plaintiffs.

Michael J. Norton, U.S. Atty., William G. Pharo, U.S. Attorney's Office, Civ. Div., Denver, Colo., and S. Hollis Fleischer, U.S. Dept. of Justice, Tax Div., Trial Attorney Office of Sp. Litigation, Washington, D.C., for defendants.

## ORDER

SPARR, District Judge.

THIS MATTER comes before the Court on Defendants' motion to dismiss the third amended complaint or for summary judgment. In light of the particular circumstances of this case, a brief description of its procedural history is·in order.

### Procedural History

The third amended complaint was filed on November 27, 1989. On March 30, 1988, Judge Weinshienk dismissed the complaint and cause of action. Plaintiffs appealed the dismissal and on November 14, 1989 the Court of Appeals issued its mandate, affirming the dismissal on all claims except the National Commodity & Barter Exchange's (hereafter NCBA or Plaintiffs) *Bivens* claims for violations of the First and Fourth Amendments against the Defendants in their individual capacities. The cause was remanded to the District Court with directions to allow the NCBA to file a third amended complaint which clearly outlines the basis for both of these claims 886 F.2d 1240, 1248 (10th Cir.1989). In particular, the opinion noted that the third amended complaint must clearly identify the property held by NCBA as an entity which has been subject to the allegedly illegal searches violative of NCBA's constitutional rights under the First and Fourth Amendments, as well as the dates of the violations and the specific property involved and indicate how the claims raised in this case are different from those raised in earlier actions. The Court of Appeals also indicated that the NCBA can sue only with respect to its own property or rights allegedly infringed by identifiable Defendants, and the complaint must clearly indicate the property held by the NCBA as an entity which has been subject to the allegedly illegal search or seizure. Finally, the Court of Appeals set forth the two-step analysis which this Court must now undertake: if the district court determines that the NCBA has set forth sufficient facts to state a claim under the First and Fourth Amendments, it should then consider whether the Defendants are entitled to the defense of qualified immunity. This court will consider the directions of the Tenth Circuit in considering the sufficiency of the complaint.

The remainder of the original action, which the Court of Appeals examined in terms of the propriety of dismissal, concerned sovereign immunity as a bar to suit against the Defendants in their official capacities; the claim for injunctive relief barred by 26 U.S.C. § 7421 (1982); and the (then) Plaintiffs' failure to overcome the presumption that 26 U.S.C. § 6700 was constitutional. The Court of Appeals determined that the claim for relief under *Bivens* for violation of the Fifth Amendment would not be cognizable [1], and also af-

---

1. Here the Court of Appeals applied the test considerations outlined in *Schweiker v. Chilicky,* 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988) in their determination that it would be appropriate to recognize a *Bivens* claim for a Fifth Amendment violation here, noting that the NCBA had recourse to challenge the legality of the tax penalty assessment under the Internal

firmed dismissal of the RICO claim and request for injunctive relief.

The Court of Appeals noted at 1244 that the previous (second amended) complaint did not comply with the requirement that it present a "short and plain" statement of claims. This observation is noteworthy as the Court of Appeals explained later at 1248 that "due to the obtuse language of much of the complaint, we are unable to discern the precise factual basis for each of these *Bivens* claims for violations of the First and Fourth Amendments) claims." The Tenth Circuit allowed the NCBA to refile these claims within the guidelines of the opinion on appeal. The Tenth Circuit affirmed the dismissal of the remainder of the claims and parties.

The Court's examination of the third amended complaint, the motion to dismiss, the response, as well as the supplemental pleadings, will be comprised of two primary portions: (1) whether Plaintiffs have stated claims a *Bivens* action for violation of the First and Fourth Amendments—here this court will also consider Plaintiffs' compliance with the explicit directions of the Tenth Circuit; and (2) if Plaintiffs are able to state such claims, whether Defendants are entitled to the defense of qualified immunity.

## I. Sufficiency of the *Bivens* Claims.

The Supreme Court in *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) held that there should be a cause of action for damages against a Federal official who engages in unconstitutional conduct. The Court, however, cautioned that if there are any "special factors counseling hesitation in the absence of affirmative action by Congress," *id.*, at 396, 91 S.Ct. at 2005, courts should decline to create an additional remedy. See *Lombardi v. Small Business Admin.*, 889 F.2d 959, 960–61 (10th Cir.1989). In *NCBA v. Gibbs* the Tenth Circuit determined that such special factors existed with regard to the *Bivens* claim for a Fifth Amendment

Revenue Code. The Court of Appeals made no such analysis of the propriety of recognizing

violation, and disallowed the requested remedy. The Court did not make such a finding on either the First or Fourth Amendment claims. Consequently, this court will allow the claims as a matter of law. The *Bivens* remedy has been extended to First Amendment claims by *dicta* in *Nixon v. Fitzgerald*, 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982), and has also been held as a proper basis for a *Bivens* claim in *Dellums v. Powell*, 566 F.2d 167 (D.C.Cir.1977).

### A. The First Amendment Claim

 Here, the Plaintiffs were charged with the responsibility of identifying with particularity the Defendants involved as well as the conduct which amounted to the violation of the NCBA's own rights (not asserted on behalf of others). It appears unlikely that the NCBA has met this challenge, but the court will examine each element with particularity.

As an organization, the NCBA is entitled to First Amendment right of freedom of association. *Pleasant v. Lovell*, 876 F.2d 787, 795 (10th Cir.1989). The Supreme Court has identified two aspects of the First Amendment right of freedom of association: a liberty interest in intimate human relationships which is secured against undue intrusion by the government; and the right to associate for purposes of engaging in First Amendment protected activities, which amounts to a means of preserving liberties. *Roberts v. United States Jaycees*, 468 U.S. 609, 618, 104 S.Ct. 3244, 3249, 82 L.Ed.2d 462 (1984). The Supreme Court also noted that it had "long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Id.* at 622, 104 S.Ct. at 3252 (citations omitted). An explanation of prohibited government actions follows this description, but the *Roberts* opinion notes the qualification that the right to associate for expressive purposes is not absolute, and that "infringements on

such claims with regard to the First and Fourth Amendment *Bivens* claims.

that right may be justified by regulations adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms." *Id.* at 623, 104 S.Ct. at 3252 (citations omitted). It is with this instruction that this court will examine the sufficiency of the NCBA's asserted claims.

In addition to the above mentioned qualifications on the right of freedom of association articulated in the *Roberts v. United States Jaycees* case above, it is also appropriate to note other restrictions on the right. The Tenth Circuit noted in *Pleasant v. Lovell*, 876 F.2d at 803: "The first amendment does not protect against investigation of suspected criminal activity, but as a safeguard, the requirements of the fourth amendment must be applied with 'scrupulous exactitude.'" Citing *Zurcher v. Stanford Daily*, 436 U.S. 547, 564, 98 S.Ct. 1970, 1980–81, 56 L.Ed.2d 525 (1978). The "scrupulous exactitude" standard, originating in *Stanford v. Texas*, 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965), was elaborated upon in *Zurcher*, where the Supreme Court added that "[w]here presumptively protected materials are sought to be seized, the warrant requirement should be administered to leave as little as possible to the discretion or whim of the officer in the field. *Zurcher v. Stanford Daily*, 436 U.S. at 564, 98 S.Ct. at 1981.

The type of "chilling effect" mentioned by Plaintiffs in the complaint is not particularly specific. It describes only very generally ways in which the NCBA's rights are implicated. In fact, the complaint does not describe activity which would not be considered as a subjective chill and not actionable pursuant to *Laird v. Tatum*, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972). *Laird* raises the issue of whether the federal court's jurisdiction can be invoked by a complainant who alleges that the exercise of First Amendment rights is being chilled by the mere existence, without more, of a governmental investigative and data gathering activity that is alleged to be broader in scope than is reasonably necessary for the accomplishment of a valid governmental purpose. The claim also fails to set

forth any particular injuries suffered by the Plaintiffs themselves, and it only offers the general allegation that the rights of the NCBA's members were chilled by the Defendants' conduct. The claims of individual members of the NCBA were dismissed in the previous action, and such dismissal was affirmed by the Tenth Circuit. In light of the structure of this complaint, it is exceedingly difficult to determine which claims (as factual allegations in particular) are directed particularly at associational activities of the Plaintiffs and which also involved the activities of NCBA individual members. This is especially apparent in the factual allegations regarding the searches of individuals where NCBA materials were allegedly seized. The First Amendment claim only states that "as a direct and proximate result of the aforementioned acts of the defendants, plaintiffs' First Amendment rights have been chilled or otherwise violated ..." This is apparently a reference to the discouraging of members' participation in protected activities. However, it is not clear how this interest belongs to the NCBA and not to its individual members. This also applies to the majority of the searches and seizures, claims that the government infiltrated its associational activities, engaged in mail tampering and abusive criminal prosecutions of certain NCBA members.

There is no allegation in the complaint that the material belonged to the NCBA, only that it concerned the NCBA—in the nature of membership lists, etc. With regard to governmental investigation of a political organization which impermissibly burdens First Amendment rights, the Supreme Court noted in *N.A.A.C.P. v. Alabama ex rel. Patterson*, 357 U.S. 449, 466, 78 S.Ct. 1163, 1173–74, 2 L.Ed.2d 1488 (1958) that compelled disclosure of membership may have a deterrent effect on the free enjoyment of the right to associate. Of note here is the Plaintiffs' response brief, where there is much discussion of the type of protection against First Amendment incursions to which the Plaintiffs are entitled, but nowhere is the source of the alleged chill in the associational rights of

the organization identified. There is no reference concerning what activities the Defendants engaged in which resulted in the chilling of the Plaintiffs' rights. Again, the court must note here that there exist no claims of individual Plaintiffs here as those claims were previously dismissed. Further, Plaintiffs fail to indicate in the preliminary allegations of the complaint how the "known incidents" of surveillance frustrate the purpose of NCBA's organization or otherwise threaten its associational rights.

The first amendment claim also contains references to conspiracy and unequal treatment, apparently arising from the fact that Plaintiffs' members were tax protestors and as a consequence were allegedly prosecuted differently. These two broad claims, mentioned almost in passing in the complaint, bear little recognizable relationship to the first amendment claim. The court will effectively disregard them as they do not appear to be germane to the elements of the first amendment claim. Two more claims are made in the first amendment claim which are more specific. The first allegation concerns mail tampering, and the pertinent allegation states only that, on numerous occasions, the NCBA and its members have received mail which has been opened, misdirected or otherwise tampered with. Plaintiffs' attorney also claims that his firm also had its mail opened or otherwise tampered with on numerous occasions. The second more specific allegation claims that the government has infiltrated its associational activities. Here the Plaintiffs provide general description of "known incidents of surveillance" which took place in a number of locations in different states over the period of several years. However this court must hold here that the Plaintiffs have failed to comply with the Tenth Circuit pleading mandate regarding how these claims were to be stated.

The first amendment does protect against compelled disclosure of identities of group members and associational freedoms apply to organization challenging tax laws. *Pleasant v. Lovell*, 876 F.2d at 795 (citations omitted). The protections afforded stem from the purposes of the group and whether it is engaged in commercial or noncommercial activity, but the presence of some commercial activity does not change the standard of first amendment review, but the presence of some commercial activity might make the challenged state action less disruptive of the political message. *In re Grand Jury Proceeding*, 842 F.2d 1229, 1235 (11th Cir.1988). The key issue in regard to whether the alleged compelled disclosure was for an improper purpose is whether the NCBA can identify a protectable interest (*i.e.*, that the information sought was not for purposes of investigating criminal activity or suspected criminal activity) and whether, if there is a protectable interest, the government can demonstrate no compelling state interest in disclosure of the information.

A prima facie case of infringement of associational rights can be made out by the assertion of compelled disclosure of membership list. *In re First Nat. Bank, Englewood, Colo.*, 701 F.2d 115, 117 (10th Cir. 1983). Once the prima facie case is established, the government must then come forward and show a compelling state interest in the disclosure of the information. Although the test here may seem relatively straightforward in its two elements of establishing a protectable interest and then the government coming forward with a compelling state interest, this analysis may be of little import where the information sought is contained in legitimate search warrants. The NCBA has continually argued that several of the search warrants it refers to are suspect, but it does not in this action seek to have any warrants declared void. On the contrary, the Government argues that the warrants which Plaintiffs have attacked have been upheld by courts or otherwise present no constitutional problems as to their validity. This argument may prove compelling here and may be readily contrasted from the situation in *Voss v. Bergsgaard*, 774 F.2d 402 (10th Cir.1985) where warrants were successfully challenged, and the constitutional violations flowed from the warrants. Due to the vagaries of this complaint, it is also a mat-

ter of speculation as to whether the Plaintiffs here have alleged that there was in fact a compelled disclosure of their membership lists.

Finally, the government argues in its motion to dismiss that information regarding the alleged first amendment violations was received by the Internal Revenue Service agents as a result of consensual monitoring which was not designed for the purpose of obtaining an improper goal such as securing the membership list of the NCBA. In their response, Plaintiffs do not in effect dispute Defendants' assertion that the monitoring was done for the purpose of investigating violations of the tax laws. The consensual monitoring claim, like the other First Amendment claims asserted by the Plaintiffs, is vague and fails to specifically identify both the nature and particularities of Defendants' actions which were alleged to be violative of the First Amendment.

### B. The Fourth Amendment Claim

With regard to the Tenth Circuit mandate here, the NCBA was charged with the task of specifically identifying particular defendants who committed particular acts with regard to specific property which belonged to the NCBA. As was the problem with the claims based on the alleged First Amendment violations, the court again is presented with the difficulty of construing general factual allegations and matching them with a claim for relief. No specific property or act is identified in this claim. Plaintiffs allege simply (and numerous times) that their Fourth Amendment rights were violated. Plaintiffs' failure to specifically set forth the unauthorized entry and identify the holder of the protectable privacy interest makes any meaningful analysis of the claim difficult at best. Plaintiffs have also included in their claim the statement that the Defendants committed the unreasonable searches for effecting the aforesaid conspiracy.

As noted above, the requirements of the Fourth Amendment must be applied with scrupulous exactitude where the First Amendment is involved. In addition, the search and seizure of items presumptively protected by the First Amendment must strictly comply with the Fourth Amendment. *Pleasant v. Lovell*, 876 F.2d at 794. As with the analysis above, the court is again directed to whether the property involved is protected by the Amendment's constraints. This results in a problem once again for the Plaintiffs as they fail to specify to whom the material seized belonged or even the particular nature of the property.

As Plaintiffs are unable to establish the first element of the Fourth Amendment claim, that the property in question belonged to the Plaintiffs, the next step of analysis which is appropriate after a determination that presumptively protected materials have been seized is whether the safeguards against harms and threatened harm resulting from searches and seizures of materials belonging to the NCBA are adequate. The sufficiency of these safeguards may be determined by the reasonableness of the search warrants. See *Zurcher v. Stanford Daily*, 436 U.S. at 565–66, 98 S.Ct. at 1981–82. Here the Plaintiffs do not directly attack the sufficiency of the warrants, and it appears that most of the search warrants described have been upheld as there is no contrary indication in the pleadings.

Accordingly, the court must conclude that the Plaintiffs are unable to state a claim for a *Bivens* action for an alleged Fourth Amendment violation. Plaintiffs have failed to set forthwith adequate specificity the specific violation of any particular right or interest which belonged to the Plaintiffs or either of them. This is inconsistent with the Tenth Circuit's mandate and applicable case law. Accordingly, the court concludes that the Plaintiffs are unable to state a claim for either a First Amendment or a Fourth Amendment violation in their *Bivens* claims.

### II. Qualified Immunity.

As the court has dismissed the *Bivens* claims for First and Fourth Amendment violations on the ground for failure to state a claim and failure to comply with the Tenth Circuit remand, any analysis of qualified immunity is mooted. The court would note, however, that the mere assertion by

the Plaintiffs that the Defendants acted in violation of certain federal case law or statutes, or even acted in furtherance of a conspiracy, would not have saved the complaint from dismissal.

Accordingly, for the reasons stated in this order, the Defendants' motion to dismiss will be GRANTED.

It is, therefore, ORDERED that this action is DISMISSED.