951 F.2d 1172
 92-1 USTC P 50,002
 NATIONAL COMMODITY AND BARTER ASSOCIATION, its service wing,
National Commodity Exchange, and Paul R. Carter,
Petitioners-Appellants,
v.
UNITED STATES of America and a Grand Jury thereof,
Respondents-Appellees.
 No. 90-1145.
 United States Court of Appeals,
Tenth Circuit.
 Dec. 9, 1991.
 
 William A. Cohan (Jennifer A. Greene, with him on the brief), of Cohan & Greene, Encinitas, Cal., for petitioners-appellants.
 Gerald J. Rafferty, Asst. U.S. Atty. (Michael J. Norton, U.S. Atty., with him on the brief), Denver, Colo., for respondents-appellees.
 Before MOORE, SETH and BRORBY, Circuit Judges.
 SETH, Circuit Judge.
 
 
 1
 This case stems from a grand jury investigation of a private banking system for possible violations of federal money laundering statutes, 31 U.S.C. §§ 5313, 5324. Section 5313 and its implementing regulation, 31 C.F.R. § 103.22, require domestic financial institutions to file a currency transaction report whenever the institution handles a transaction involving United States currency in an amount over $10,000. Section 5324 prohibits the filing of false currency transaction reports as well as the structuring of transactions to avoid the reporting requirements of § 5313.
 
 
 2
 Appellants National Commodity and Barter Association (NCBA), National Commodity Exchange (NCE) and Paul Carter appeal the district court's refusal to quash grand jury subpoenas duces tecum served on several Denver area banks. The subpoenas in issue are for the production of a variety of the banks' records of transactions handled for a number of named individuals, for NCBA, and for Extra Fast Cash (EFC) (a check cashing business of Paul and Brenda Carter) as hereinafter described.
 
 
 3
 The NCBA describes itself in its brief as "a non-commercial, non-profit political/educational organization which espouses dissident views regarding the federal reserve and the IRS and advocates the return to currency backed by gold and/or silver."
 
 
 4
 The NCE is what Appellants describe as a "service wing" of NCBA. It was created to handle financial transactions of NCBA membership, including check cashing, purchase of gold and silver and bill paying. It was operated by NCBA members as a private or warehouse bank.
 
 
 5
 Until 1988 these transactions were processed through bank accounts in NCE's name in a manner that would insure a high degree of privacy for the member. A member would deliver a check to NCE staffers who would deposit it in an NCE account. Cash was then returned to the member through insured mail. The only records of these transactions maintained by NCE were the current balances of each member. In January 1989, NCBA/NCE began using EFC to convert members' checks to cash. EFC received checks directly from NCBA members, deposited them in an EFC account and delivered the cash to NCBA or NCE for ultimate return to the NCBA members. The return of the cash was asserted to have been done by registered mail.
 
 
 6
 In late 1989 a federal grand jury began investigating possible violations of currency reporting and structuring statutes by Appellants, EFC and some NCBA members. As mentioned, the grand jury issued subpoenas to several Denver area banks requesting the production of all records of open or closed accounts in the name of or controlled by NCBA, EFC and several NCBA members. Specifically, the subpoenas requested documents relating to savings accounts, certificates of deposit, checking accounts, loans, credit cards, safe deposit boxes, money orders, wire transfers, cashier's checks, traveler's checks, purchases and sales of treasury bills, IRA/Keogh pension plans, letters of credit and copies of currency transaction reports.
 
 
 7
 Appellants moved to intervene and quash the grand jury subpoenas on the ground that compliance with the subpoenas would necessarily disclose the identities of members and thus would interfere with the rights of NCBA members to freedom of association under the First Amendment. The district court found that Appellants had made a prima facie showing that compliance by the banks would infringe on NCBA members' associational rights and ordered an evidentiary hearing. Following the hearing, the trial court held that the government had a compelling need for the records, the records bore a substantial relationship to the criminal investigation, and "the relevant information cannot be obtained via less intrusive means." The Appellants' motion to quash was thus denied.
 
 
 8
 The organizations which have taken this appeal argue that the enforcement of the subpoenas in question would violate the First Amendment rights of their members to freedom of association. The standing of the organizations to assert such rights of their members was decided in In re First Nat'l Bank, Englewood, Colo., 701 F.2d 115, 118 (10th Cir.1983), and indirectly in Eastland v. United States Servicemen's Fund, 421 U.S. 491, 95 S.Ct. 1813, 44 L.Ed.2d 324 (1975).
 
 
 9
 This Court has had occasion to rule on similar cases involving NCBA. See Pleasant v. Lovell, 876 F.2d 787 (10th Cir.1989); Grandbouche v. Clancy, 825 F.2d 1463 (10th Cir.1987); In re First Nat'l Bank, Englewood, Colo., 701 F.2d 115 (10th Cir.1983). But even cases involving NCBA and addressing similar issues cannot be relied upon here because organizations change their purposes, causes, directions and methods. For example, this case deals with an investigation of money laundering through a third party, EFC, which has not been addressed in the previous NCBA cases. Also, in this case, there is no evidence of NCBA's educational activities in the form of seminars, meetings and publications which have been used in past cases to support First Amendment claims. See, e.g., Grandbouche at 1466. Therefore, this case will be decided on the facts presented to this Court in the record without regard to past NCBA activities.
 
 
 10
 Appellants claim that release of the subpoenaed records would reveal the names of members of NCBA and subject them to investigation and harassment by the Internal Revenue Service (IRS). Appellants argue that this will have a chilling effect on the members' First Amendment rights. Affidavits attached to Appellants' motion to quash describe harassment by the IRS, loss of membership and an unwillingness of potential members of NCBA to associate with the organization due to fear of investigation by the IRS. The district court found that these affidavits constitute a prima facie case of infringement of associational rights.
 
 
 11
 We held in First Nat'l Bank, Englewood, Colo., 701 F.2d at 118-19, that when a party makes a prima facie showing of First Amendment infringement, the government must show a compelling need to obtain the documents identifying petitioner's members. Further, the government must show that the records sought bear a substantial relationship to this compelling interest. In re Grand Jury Proceeding, 842 F.2d 1229, 1232-33 (11th Cir.1988), citing NAACP v. Alabama, 357 U.S. 449, 464, 78 S.Ct. 1163, 1172-73, 2 L.Ed.2d 1488 (1958).
 
 
 12
 Appellants contend that the district court erred by ruling that the government met its burden of showing a compelling need for the subpoenaed records. We do not agree. In First Nat'l Bank of Tulsa v. United States Dept. of Justice, 865 F.2d 217 (10th Cir.1989), this Court held that " '[a] good-faith criminal investigation into possible evasion of reporting requirements through the use of a private banking system that keeps no records is a compelling interest.' " Id. at 220 (quoting In re Grand Jury Proceeding, 842 F.2d at 1236). The situation before us is the same as that in First Nat'l Bank of Tulsa. There is nothing in the record to suggest that the grand jury investigation into violations of the §§ 5313 and 5324 reporting requirements is being pursued in bad faith.
 
 
 13
 Additionally, there is a presumption of regularity that attaches to a grand jury subpoena. The party challenging the subpoena has the burden of proving any irregularities. First Nat'l Bank of Tulsa, 865 F.2d at 219. Appellants have not met this burden. The government's investigation of NCBA and NCE activities, therefore, constitutes a compelling interest.
 
 
 14
 The government has also met its burden of demonstrating a substantial relationship between the subpoenaed records and its compelling interest in the criminal investigation. The grand jury is investigating possible violations of 31 U.S.C. §§ 5313, 5324. To aid its investigation, the grand jury has subpoenaed fifteen categories of documents and records of transactions. The fact that the subpoenas are broad in scope does not suggest that the government cannot show a substantial relationship to a compelling interest. Some of these records admittedly are not subject to the currency transaction reporting requirements. The broad scope of the subpoenas is necessary, however, due to the complex nature of the United States financial system and the numerous ways money can be moved within it.
 
 
 15
 Moreover, Special Agent Herrera testified at the evidentiary hearing that all of the subpoenaed records are necessary to determine if there has been a violation of the currency transaction reporting requirements. This testimony demonstrates a substantial relationship between the subpoenaed records and the government's compelling interest.
 
 
 16
 The organizations bringing this appeal also argue that 31 U.S.C. §§ 5313 and 5324 are unconstitutional as applied to them. We cannot decide this question because §§ 5313 and 5324 have not yet been applied to NCBA/NCE activities. See ACORN v. City of Tulsa, Okla., 835 F.2d 735, 744 (10th Cir.1987). This Court "will not decide constitutional issues which are hypothetical, or in advance of the necessity for deciding them, or without reference to the manner in which the statute, whose constitutional validity is drawn in question, is to be applied." Asbury Hosp. v. Cass County, 326 U.S. 207, 213-14, 66 S.Ct. 61, 64, 90 L.Ed. 6 (1945). Therefore, Appellants' "as applied" challenge to the constitutionality of §§ 5313 and 5324 is premature.
 
 
 17
 Accordingly, the order of the district court denying Appellants' motion to quash is AFFIRMED.