701 F.2d 115
 12 Fed. R. Evid. Serv. 1096
 In re Grand Jury Subpoena to FIRST NATIONAL BANK, ENGLEWOOD,
COLORADO.
John E. GRANDBOUCHE, Jerry L. Manka, Larry Martin, National
Commodity and Barter Association, and National
Unconstitutional Tax Strike Committee,
Petitioners-Appellants,
v.
UNITED STATES of America, Respondent-Appellee.
 No. 83-1047.
 United States Court of Appeals,
Tenth Circuit.
 Feb. 25, 1983.
 
 William A. Cohan, Denver, Colo. (John E. Grandbouche and Jerry Manka, pro se, with him on the brief), for petitioners-appellants.
 Robert Gay Guthrie, Asst. U.S. Atty., Denver, Colo. (Robert N. Miller, U.S. Atty., Denver, Colo., with him on the brief), for respondent-appellee.
 Before McKAY, LOGAN and SEYMOUR, Circuit Judges.
 SEYMOUR, Circuit Judge.
 
 
 1
 Petitioners seek review of the district court's refusal to quash a grand jury subpoena duces tecum served on the First National Bank of Englewood, Colorado. The subpoena directed production of any and all records pertaining to the accounts of petitioner National Commodity & Barter Association (NCBA) and National Unconstitutional Tax Strike Committee (NUTS). These groups espouse dissident views on the federal income tax system. Petitioners Grandbouche, Martin, and Manka are members of NCBA. Petitioners asserted below that compliance with the subpoena would infringe their First Amendment rights. The district court held that they lacked standing to raise this argument and ordered enforcement. The bank turned the records over to the Assistant United States Attorney, who placed them under seal. We ordered him to keep the records sealed until we had the opportunity to consider the merits of petitioners' claim.
 
 
 2
 On appeal, petitioners argue that the compelled disclosure of membership identities, which would be the inevitable result of unsealing the records and transferring them to the grand jury, would chill the rights of NCBA and NUTS members to freedom of association guaranteed by the First Amendment. Affidavits submitted to the district court describe harassment and intimidation of petitioners' known members, and the resulting reluctance of people sympathetic to the goals of NCBA to associate with the group for fear of reprisals. Petitioners assert that they have standing to raise these claims and that they have made out a prima facie case of infringement of associational rights sufficient to entitle them to an evidentiary hearing on the issue. We agree.[1]
 
 
 3
 "It is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment ...." NAACP v. Alabama, 357 U.S. 449, 460, 78 S.Ct. 1163, 1170, 2 L.Ed.2d 1488 (1958). The Supreme Court declared this right to be protected against both intentional and incidental infringement. "In the domain of these indispensable liberties, whether of speech, press, or association, the decisions of this Court recognize that abridgement of such rights, even though unintended, may inevitably follow from varied forms of governmental action." Id. at 461, 78 S.Ct. at 1171. To overcome the deterrent effect on associational rights resulting from compelled disclosure of membership lists, the government must demonstrate a compelling interest, id. at 463, 78 S.Ct. at 1172, and a substantial relationship between the material sought and legitimate governmental goals, id. at 464, 78 S.Ct. at 1172. In Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), the Court said:
 
 
 4
 "We long have recognized that significant encroachments on First Amendment rights of the sort that compelled disclosure imposes cannot be justified by a mere showing of some legitimate governmental interest. Since [NAACP v. Alabama ] we have required that the subordinating interests of the State must survive exacting scrutiny. We also have insisted that there be a 'relevant correlation' or 'substantial relation' between the governmental interest and the information required to be disclosed."
 
 
 5
 Id. at 64, 96 S.Ct. at 656 (footnotes omitted).
 
 
 6
 The Government argues that petitioners lack the requisite standing to raise their First Amendment claims because the summons was directed to third-party records of the bank, citing Fisher v. United States, 425 U.S. 391, 401 n. 7, 96 S.Ct. 1569, 1576 n. 7, 48 L.Ed.2d 39 (1976), and United States v. Miller, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976). Neither case supports the Government's position.
 
 
 7
 In Fisher, the Supreme Court concluded that "compelled production of documents from an attorney does not implicate whatever Fifth Amendment privilege the taxpayer might have enjoyed from being compelled to produce them himself." Fisher, 425 U.S. at 402, 96 S.Ct. at 1576 (emphasis added). Fifth Amendment rights cannot be infringed unless the governmental compulsion is directed at the holder of the right; "the Fifth Amendment protects against 'compelled self -incrimination, not [the disclosure of] private information.' " Id. at 401, 96 S.Ct. at 1576 (emphasis added) (quoting United States v. Nobles, 422 U.S. 225, 233 n. 7, 95 S.Ct. 2160, 2167 n. 7, 45 L.Ed.2d 141 (1975)). There can be no violation of one's Fifth Amendment right not to testify against oneself where the records are in the hands of a third party; hence, one cannot complain on this ground about a subpoena directed to third parties to produce records. Similarly, in Miller the Court held that a depositor had no protected Fourth Amendment interest in bank records obtained by means of an allegedly defective subpoena. See Miller, 425 U.S. at 440, 96 S.Ct. at 1622. The bank records are not the depositor's private papers and, having given the information to the bank, the depositor has no legitimate expectation of continued privacy. Because no constitutionally protected interest was found in Fisher and Miller, the Court concluded in each case that the third-party subpoena could not be attacked.
 
 
 8
 By contrast, the Court in Fisher recognized that private information sought to be obtained from third parties, such as that in the case at bar, is protected by sources other than the Fifth Amendment. Fisher, 425 U.S. at 401, 96 S.Ct. at 1576. The Court specifically named the First Amendment as one source of this protection, citing NAACP v. Alabama.[2]Id. In Miller, the Court again noted that First Amendment claims may be implicated by the summons of records held by a third party. See Miller, 425 U.S. at 444 n. 6, 96 S.Ct. at 1625 n. 6. This is so because the constitutionally protected right, freedom to associate freely and anonymously, will be chilled equally whether the associational information is compelled from the organization itself or from third parties. See Local 1814, International Longshoremen's Association v. Waterfront Commission, 667 F.2d 267, 271 (2d Cir.1981).
 
 
 9
 The Supreme Court has acknowledged that an organization and its members have standing to protect the members from unwarranted governmental invasion of their First Amendment right of association although the governmental action is directed at third parties. Thus, in Eastland v. United States Servicemen's Fund, 421 U.S. 491, 95 S.Ct. 1813, 44 L.Ed.2d 324 (1975), the Court considered the merits of the Fund's argument that the associational rights of its members would be unconstitutionally infringed where a Senate subcommittee had issued a subpoena duces tecum directing a bank to produce the Fund's records. The Court specifically noted that the action was properly before it. Id. at 501 n. 14, 95 S.Ct. at 1820 n. 14.
 
 
 10
 Other courts have considered First Amendment claims when the government sought third-party records that might disclose information tending to chill associational rights. See, e.g., Local 1814, 667 F.2d at 270-71; United States v. Citizens State Bank, 612 F.2d 1091 (8th Cir.1980); Pollard v. Roberts, 283 F.Supp. 248, 259 (E.D.Ark.) (three-judge court), aff'd per curiam, 393 U.S. 14, 89 S.Ct. 47, 21 L.Ed.2d 14 (1968); but see Reporters Committee for Freedom of the Press v. American Telephone & Telegraph Co., 593 F.2d 1030, 1055 n. 82 (D.C.Cir.1978) (opinion of Wilkey, J., only, see id. at 1071 n. 4, 1087), cert. denied, 440 U.S. 949, 99 S.Ct. 1431, 59 L.Ed.2d 639 (1979). In Citizens State Bank, the court held that the alleged infringement of First Amendment rights may warrant limiting enforcement of an Internal Revenue Service bank subpoena under facts substantially similar to those before us. The court concluded that when a party makes "a prima facie showing of arguable First Amendment infringement ... the burden then [shifts] to the government to make the appropriate showing of need for the material." 612 F.2d at 1094.
 
 
 11
 In this case, petitioners' affidavits have made a sufficient showing of a potential First Amendment violation to warrant an evidentiary hearing. The chilling effect of a summons served by an IRS agent to obtain membership records of a tax protester group has been said to be "readily apparent." United States v. Grayson County State Bank, 656 F.2d 1070, 1074 (5th Cir.1981), cert. denied, 455 U.S. 920, 102 S.Ct. 1276, 71 L.Ed.2d 460 (1982). It is equally apparent that enforcement of a subpoena issued by the grand jury investigating the NCBA and NUTS may have the same or greater chilling effect on those organizations' members, as attested to by the affidavits.
 
 
 12
 The enforcement order is reversed and the case is remanded for an evidentiary hearing to consider petitioners' First Amendment claims. If the district court determines that enforcement of the subpoena would likely chill associational rights, the Government must show a compelling need to obtain documents identifying petitioners' members. Citizens State Bank, 612 F.2d at 1094-95. In balancing the interests involved, the court should consider whether the Government can acquire the material it ostensibly seeks by obtaining the records with the members' names deleted, or by otherwise limiting the breadth of the subpoena, see Local 1814, 667 F.2d at 273-74.
 
 
 13
 Reversed and remanded.
 
 
 
 [1]
 Because we conclude that this claim has merit, we do not address the other issues raised on appeal
 
 
 [2]
 The Government relies on footnote seven of the Fisher opinion to support its standing argument. Brief of Appellee at 8. This reliance is misplaced. No First Amendment issue was raised in either of the lower court opinions under consideration in Fisher. See United States v. Fisher, 500 F.2d 683 (3d Cir.1974) (en banc), aff'd, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976); United States v. Kasmir, 499 F.2d 444 (5th Cir.1974), rev'd, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). Thus, when the Supreme Court remarked in Fisher that "First Amendment values are also plainly not implicated," it was merely noting that no First Amendment issues were before it. See Fisher v. United States, 425 US. 391, 401 n. 7, 96 S.Ct. 1569, 1576 n. 7, 48 L.Ed.2d 39 (1976). In view of our reading of Fisher, it is apparent that any language to the contrary in United States v. Brown, 600 F.2d 248, 256 (10th Cir.), cert. denied, 444 U.S. 917, 100 S.Ct. 233, 62 L.Ed.2d 172 (1979), is overbroad and that the case should be confined to its facts