31 F.3d 1521
 74 A.F.T.R.2d 94-5709
 NATIONAL COMMODITY AND BARTER ASSOCIATION, National
Commodity Exchange, Plaintiffs-Appellants,
v.
Glenn L. ARCHER, Larry D. Bergsgaard, Joseph A. Brousseau,
Frank Contos, Jr., Lester Furr, Patrick Henry, Charles
Holden, Paulette G. Johnson, John E. Keller, Gerald W.
Leland, Donald Lewis, Albert J. Monica, Keith Mueller, C.D.
Switzer, Ronald Urbanski, Darryl Watkins, Nathan Woodard,
Charles Young, Defendants-Appellees.
 No. 92-1031.
 United States Court of Appeals,
Tenth Circuit.
 Aug. 4, 1994.
 
 William A. Cohan of Cohan & Greene, Encinitas, CA (Jennifer A. Greene of Cohan & Greene, with him on the brief), for plaintiffs-appellants.
 Robert W. Metzler, Atty., Tax Div., Dept. of Justice, Washington, DC (Michael J. Norton, U.S. Atty., James A. Bruton, Acting Asst. Atty. Gen., and Jonathan S. Cohen, Atty., Tax Div., Dept. of Justice, Washington, DC, with him on the brief), for defendants-appellees.
 Before SEYMOUR, Chief Judge, HOLLOWAY and LOGAN, Circuit Judges.
 HOLLOWAY, Circuit Judge.
 
 
 1
 Plaintiffs-appellants National Commodity & Barter Association and the National Commodity Exchange (collectively referred to generally as the NCBA) appeal a decision of the district court dismissing the instant action. 790 F.Supp. 233 (D.Colo.1991). The NCBA asserts First and Fourth Amendment Bivens claims,[1] inter alia, against several Internal Revenue Service officers and employees, and several officers and employees of the Department of Justice in their individual capacities. Jurisdiction below was grounded on 28 U.S.C. Secs. 1331 and 1343 in light of the constitutional claims asserted. Our jurisdiction rests on 28 U.S.C. Sec. 1291. The appeal presents questions of the viability of the First and Fourth Amendment Bivens claims and of the qualified immunity defense asserted by the defendants.
 
 
 2
 * A
 
 
 3
 The instant case has been before this court before. See National Commodity & Barter Ass'n, et al. v. Gibbs, 886 F.2d 1240 (10th Cir.1989) (NCBA I ). To consider the case in its proper perspective, we must note the prior proceedings in some detail. We noted in NCBA I that the National Commodity & Barter Association, the National Barter Exchange, and several individual members of these organizations had brought this suit against several federal agencies and employees, alleging violations of its First, Fourth and Fifth Amendment rights as Bivens claims.
 
 
 4
 The defendants moved to dismiss that complaint under Fed.R.Civ.P. 12(b)(6). As we noted, 886 F.2d at 1243, after a hearing the district judge sustained the motion in an oral ruling. He held that claims against the defendants in their official capacities were barred by sovereign immunity and that NCBA's damage claims against the defendants in their individual capacities were barred by the doctrine of qualified immunity. In NCBA I we concluded that "except for the NCBA's Bivens claims for violations of the first and fourth amendments, dismissal of the complaint under Rule 12(b)(6) was appropriate in this case." Id. at 1244. NCBA I remanded the First and Fourth Amendment Bivens claims for repleading and reconsideration, along with the qualified immunity defense, which was also to be reconsidered if the complaint was held to sufficiently state a claim. Id. at 1248-49.
 
 
 5
 With respect to the First and Fourth Amendment Bivens claims, our NCBA I opinion said that the complaint consisted of a lengthy statement of "general allegations" about events spanning approximately eight years. The allegations were said to catalogue policies and activities of the government defendants designed to "demoralize, paralyze, and ultimately destroy a non-commercial, voluntary, political/educational association of individuals advocating dissident views as to the tax, monetary and fiscal law and policies of the government." We noted that the complaint gave but little identification, if any, of persons targeted, dates of events, or particular property seized and thus the complaint did not "present a 'short and plain' statement of the claims raised by the NCBA, as required by Fed.R.Civ.P. 8(a)." Id. at 1244. Because unnamed plaintiffs had not made a request to proceed anonymously and had not otherwise disclosed their identities, under the pleading rules we "dismiss[ed] the complaint as to the unnamed members of the NCBA, and consider[ed] the remainder of the claims in this appeal solely with respect to NCBA as an associational entity." Id. at 1245 (footnote omitted).
 
 
 6
 NCBA I noted that the district court had ruled that the First and Fourth Amendment Bivens claims against the named defendants in their individual capacities "were barred by the doctrine of qualified immunity, as the defendants were simply carrying out their jobs and had not violated any clearly established laws in doing so." 886 F.2d at 1247. We declined to reach that issue, but observed:
 
 
 7
 While we agree with the district court's reasoning that the defendants were entitled to qualified immunity as to the plaintiffs' Bivens claims, we do not reach this issue. Rather, we first address whether the NCBA is entitled to raise a Bivens claim in the first instance.
 
 
 8
 Id.
 
 
 9
 After our opinion rejected as inappropriate any recognition of a Bivens remedy for alleged violations of the Fifth Amendment or the Internal Revenue Code, Id. at 1248, we noted that in Pleasant v. Lovell, 876 F.2d 787 (10th Cir.1989), we had permitted individuals to proceed on First and Fourth Amendment Bivens claims on activities described in NCBA's complaint. We said:
 
 
 10
 We therefore recognize that the NCBA may bring a Bivens action for violations of the first and fourth amendments. However, due to the obtuse language of much of the complaint, we are unable to discern the precise factual basis for each of these claims. We therefore remand to the district court with directions that the court permit the NCBA to file an amended complaint which clearly outlines the basis for each of these claims, consistent with our discussion in Section I above.
 
 
 11
 In addition, since we have dismissed the complaint as to all parties except the NCBA, it is imperative that the amended complaint clearly indicate the property held by the NCBA as an entity which has been subject to the allegedly illegal searches and seizures. The NCBA can sue only with respect to its own property or rights allegedly infringed by identifiable defendants. If the district court determines that the NCBA has set forth sufficient facts to state a claim under the first and fourth amendments, it should then reconsider whether the defendants are entitled to the defense of qualified immunity.
 
 
 12
 NCBA I, 886 F.2d at 1248-49.
 
 B
 
 13
 Following our remand in NCBA I, the district judge allowed the filing of NCBA's Third Amended Complaint. A new motion to dismiss and response were filed. The judge then reconsidered the case. He noted that while the Tenth Circuit in NCBA I had held that special factors exist precluding a Bivens claim for a Fifth Amendment violation, we did not make such a finding as to either First or Fourth Amendment claims. Consequently, the judge held that he would allow the latter claims to be asserted. 790 F.Supp. at 235.
 
 
 14
 With respect to NCBA's First Amendment Bivens claim, the judge said there were several shortcomings in the complaint; that the type of "chilling effect" averred by NCBA "is not particularly specific." 790 F.Supp. at 236. The district judge also said that Laird v. Tatum, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972), raised the issue whether federal jurisdiction can be invoked by allegations of chilling by the mere existence, without more, of a governmental investigative and data gathering activity, alleged to be broader than reasonably necessary for a valid governmental purpose. 790 F.Supp. at 236. The judge concluded that the claim fails to set forth any particular injuries suffered by plaintiffs themselves. Id.
 
 
 15
 Concerning the Fourth Amendment claim, the judge stated that no specific property or act is identified; that plaintiffs allege simply that their Fourth Amendment rights were violated; and that the plaintiffs' failure to specifically set forth the unauthorized entry and failure to identify the holder of the protectible interest made any meaningful analysis of the claim "difficult at best." Id. at 238. He concluded that the plaintiffs were "unable to state a claim for a Bivens action for an alleged Fourth Amendment violation. Plaintiffs have failed to set [forth with] adequate specificity the specific violation of any particular right or interest which belonged to the plaintiffs or either of them." Id.
 
 
 16
 The judge stated that since he was dismissing the First and Fourth Amendment Bivens claims for failure to state a claim and for failure to comply with the Tenth Circuit remand, any analysis of qualified immunity was mooted. He said, however, "that the mere assertion by the plaintiffs that the defendants acted in violation of certain federal case law or statutes, or even acted in furtherance of a conspiracy, would not have saved the complaint from dismissal." Id. at 238-39. The action was dismissed and plaintiffs appeal again.
 
 II
 
 17
 * We turn to the First and Fourth Amendment Bivens claims and note these allegations:
 
 
 18
 The National Commodity and Barter Association (NCBA) is a noncommercial, nonprofit, voluntary political and educational association of individuals who believe in abolition of the Internal Revenue Service (IRS). Expression of the association's political, social and educational values takes the form of sponsoring seminars and other educational activities and the distribution of literature. The National Commodity Exchange (NCE) is a service wing of the association, available exclusively to its members, some of whom use its services to obtain gold and silver, and to have greater privacy than is available through commercial banks. The association and the exchange are headquartered in Denver. The defendants are officers and employees of the IRS or the United States Department of Justice.[2] They are sued in their individual capacities.
 
 
 19
 The complaint avers in p 7 that on April 5, 1985, several agents of the IRS including defendants Bergsgaard, Henry, and Watkins obtained search warrants and searched three locations in Denver, including the home of one NCBA member, Joseph Gorman. He had retained possession of some NCE records, currency and precious metal which were seized; items seized also included membership lists and other records, books, contributions, stationery, correspondence, brochures and legal files belonging to NCBA. These searches were held to be violative of the First and Fourth Amendments in United States v. Voss, Crim. Nos. 447M (D.Colo.), aff'd sub nom. Voss v. Bergsgaard, 774 F.2d 402 (10th Cir.1985). The property was ordered to be returned. p 8.
 
 
 20
 Also on April 5, 1985, defendant Henry and others executed a search warrant in Edina, Minnesota, on the person of Jess Clifford, an NCBA member. p 9. The affidavit for the warrant was alleged to be "virtually identical to the Colorado affidavits and the warrant itself suffered from the same defective language," p 9 stated. At the time of the search, Clifford was carrying computerized records of members of NCE's transactions and NCBA membership mailing labels. On April 5, 1985, defendant Urbanski and others executed a search warrant in one described room of the residence of NCBA members Robert and Audrey Hawley in Alexandria, South Dakota. Items seized included bank records and membership lists belonging to NCBA, and books and cassette tapes. p 10. On April 5, 1985, defendant Woodard and others executed search warrants on premises in Sioux City, Iowa, in the offices of Dr. Rosenberger, an NCBA member. Cassette tapes of speeches, lectures, discussions and articles on governmental policies of taxation and economic issues were seized. Items seized included NCBA records and NCE receipts. p 11.
 
 
 21
 In Orange County, California, on October 16, 1985, defendant Young and others executed three searches at NCBA offices, inter alia. Among items seized in the raids were NCBA/NCE membership lists and literature. p 12. Also on October 16, 1985, defendants Keller, Brousseau and others executed a warrant on premises in Bothell, Washington, and seized property belonging to NCBA and several NCBA members. Items seized included NCBA/NCE membership information and records. p 13. On June 25, 1986, defendant Monica and unnamed IRS agents seized property belonging to NCBA member Dr. Schandl at his office in Hollywood, Florida. Items seized there included NCBA membership information. p 15.
 
 
 22
 The complaint stated that many of the searches alleged were contested by Fed.R.Crim.P. 41(e) motions. Motions filed in Iowa, Minnesota and Orange County, California, resulted in orders returning much of the property seized; motions filed in South Dakota and Florida were denied without prejudice, with findings that criminal cases had been initiated against individuals targeted in the raids. p 16. The complaint stated that "execution of each of the warrants disclosed the true purpose of this massive series of raids to be the seizure of NCBA/NCE membership records," p 17, and that "[t]hese searches and seizures were part of an investigation of plaintiffs and their members which was authorized by defendants Egger, Gibbs and Switzer, as well as other national and regional IRS officers and employees...." p 19.
 
 
 23
 NCBA averred that it had been learned as early as 1973 the government, IRS, and Postal Service have carried out schemes to introduce undercover agents and informants into "tax protestor" organizations to incite distrust and dissension and frustrate the goals of such groups and breach the privacy of the membership in violation of the First and Fourth Amendments. p 20. In 1985, in Minnesota and Denver, the complaint alleged consensual monitoring of conversations between defendant Watkins and NCE Director Gorman which was beyond defendants' authority. p 21. Surveillance was conducted of public meetings posted or held by NCBA and other groups for the purpose of identifying an individual's attendance. Names of these persons were maintained in their respective IRS districts. p 22.
 
 
 24
 During the period from January 1984 through April 1985, defendants Henry, Bergsgaard, Watkins, and others acted as undercover agents and infiltrated NCBA membership in Denver, Colorado, it was stated. p 23. From July through October 1985, defendants Keller, Brousseau and others infiltrated the NCBA in Bothell, Washington. Sec. 24. From November 1985 through May 1986, defendant Furr and others acted as agents and infiltrated the NCBA in Atlanta, Georgia, it was alleged. p 25. In addition, defendant Switzer was alleged to have notified NCBA/NCE that he had made a jeopardy assessment against them for $20,000,000. p 36. The jeopardy assessment was stated to be the subject of a claim for refund, and during administrative proceedings IRS Revenue Agent Barnhard was alleged to have conceded the assessment was overstated by $19,990,000. p 39. The actions alleged were said to constitute a conspiracy pursuant to a policy of the government and IRS. The defendants allegedly acted under color of federal law and in violation of plaintiffs' and their members' rights secured by the First and Fourth Amendments.
 
 
 25
 Claims for relief are made based on the Fourth Amendment rights of plaintiffs to be free from unreasonable searches and seizures and their First Amendment right to free speech, press, and association. The complaint seeks compensatory and punitive damages and injunctive relief. pp 41-47.
 
 B
 
 26
 We must evaluate the validity of the claims in light of First and Fourth Amendment principles. The judgment we review is one sustaining a motion to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim on which relief can be granted. Such a dismissal should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); Lessman v. McCormick, 591 F.2d 605, 607-08 (10th Cir.1979). Moreover, "[t]he allegations of the complaint must be taken at face value and construed most favorably to the pleader." Lessman, 591 F.2d at 607.
 
 
 27
 The plaintiffs invoke the remedy recognized in Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). There, in the context of a Fourth Amendment claim, the Court reversed the affirmance of a dismissal for failure to state a claim, stating:
 
 
 28
 The question is merely whether petitioner, if he can demonstrate an injury consequent upon the violation by federal agents of his Fourth Amendment rights, is entitled to redress his injury through a particular remedial mechanism normally available in the federal courts.... Having concluded that petitioner's complaint states a cause of action under the Fourth Amendment, ... we hold that petitioner is entitled to recover money damages for any injuries he has suffered as a result of the agents' violation of the Amendment.
 
 
 29
 403 U.S. at 397, 91 S.Ct. at 2005.
 
 
 30
 After our remand in NCBA I, the district judge noted that we had determined in NCBA I that special factors existed causing us to disallow a Fifth Amendment Bivens remedy, but we had made no such finding on the First and Fourth Amendment Bivens claims. Hence the district judge said that he would "allow the claims as a matter of law." 790 F.Supp. at 235. We likewise hold that if claims of violations of First or Fourth Amendment rights are proven, then a Bivens remedy may be afforded to the plaintiffs for recovery of damages for such constitutional wrongs.
 
 
 31
 We considered NCBA's activities several years ago in the context of First Amendment principles. In In Re First Nat. Bank, Englewood, Colo., 701 F.2d 115 (10th Cir.1983), we reversed an order for enforcement of a grand jury subpoena during investigation of NCBA and the National Unconstitutional Tax Strike Committee. The subpoena directed production by the bank of all records pertaining to the accounts of NCBA and the Committee, groups espousing dissident views of the federal income tax system. Other petitioners were three members of NCBA. The petitioners asserted that compliance would infringe their First Amendment rights. The district court ordered compliance with the subpoena.
 
 
 32
 Affidavits submitted to the district court there described harassment of petitioner's members and resulting reluctance of others to associate with NCBA for fear of reprisal. Petitioners argued on appeal that they had standing to raise those claims and that they had made out a prima facie case of infringement of associational rights sufficient to obtain an evidentiary hearing. We agreed, stating:It is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the liberty assured by the Due Process Clause of the Fourteenth Amendment.... NAACP v. Alabama, 357 U.S. 449, 460, 78 S.Ct. 1163, 1170, 2 L.Ed.2d 1488 (1958). The Supreme Court declared this right to be protected against both intentional and incidental infringement. In the domain of these indispensable liberties, whether of speech, press, or association, the decisions of this Court recognize that abridgement of such rights, even though unintended, may inevitably follow from varied forms of governmental action. Id. at 461, 78 S.Ct. at 1171. To overcome the deterrent effect on association rights resulting from compelled disclosure of membership lists, the government must demonstrate a compelling interest, id. at 463, 78 S.Ct. at 1172, and a substantial relationship between the material sought and legitimate governmental goals, id. at 464, 78 S.Ct. at 1172.
 
 
 33
 701 F.2d at 117 (emphasis added) (internal quotations omitted). We reversed the enforcement order and remanded for an evidentiary hearing to consider the First Amendment claims. We said that if the district court found that enforcement would likely chill associational rights, the government would have to show a compelling need to obtain the documents identifying petitioners' members. Id. at 117.
 
 
 34
 We are likewise persuaded that NAACP v. Alabama, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), supports the First Amendment claims now asserted by NCBA and NCE. There, the Supreme Court reversed a ruling of the Alabama Supreme Court which had upheld an order restraining some NAACP activities in the State and requiring the production of many of the NAACP's records, including its membership list. With respect to protection of the membership lists, the Court stated:
 
 
 35
 The Association both urges that it is constitutionally entitled to resist official inquiry into its membership lists, and that it may assert, on behalf of its members, a right personal to them to be protected from compelled disclosure by the State of their affiliation with the Association as revealed by the membership lists. We think that petitioner argues more appropriately the rights of its members, and that its nexus with them is sufficient to permit that it act as their representative before this Court. In so concluding, we reject respondent's argument that the Association lacks standing to assert here constitutional rights pertaining to the members, who are not of course parties to the litigation.
 
 
 36
 ....
 
 
 37
 If petitioner's rank-and-file members are constitutionally entitled to withhold their connection with the Association despite the production order, it is manifest that this right is properly assertable by the Association. To require that it be claimed by the members themselves would result in nullification of the right at the very moment of its assertion. Petitioner is the appropriate party to assert these rights, because it and its members are in every practical sense identical.
 
 
 38
 Id. at 458-59, 78 S.Ct. at 1170 (emphasis added). The Court reversed the order for production of the membership lists stating, "[w]e think that the production order, in the respects here drawn in question, must be regarded as entailing the likelihood of a substantial restraint upon the exercise by petitioner's members of their right to freedom of association." Id. at 462, 78 S.Ct. at 1172.
 
 
 39
 The Court again upheld a constitutional claim for protection of the right of association under the First and Fourteenth Amendments in NAACP v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963). The Court invalidated a Virginia statute that imposed restrictions on NAACP's activities in forming a legal staff directing actions pertaining to racial discrimination, urging the institution of suits to challenge discrimination, and offering the services of attorneys selected and paid by its affiliates. The Court held that these activities were modes of expression and association protected by the First and Fourteenth Amendments. Reversing the Virginia Supreme Court of Appeals' judgment, the Court held that:
 
 
 40
 Chapter 33 as construed and applied abridges the freedoms of the First Amendment, protected against state action by the Fourteenth. More specifically, petitioner claims that the chapter infringes the right of the NAACP and its members and lawyers to associate for the purpose of assisting persons who seek legal redress for infringements of their constitutionally guaranteed and other rights. We think petitioner may assert this right on its own behalf, because, though a corporation, it is directly engaged in those activities, claimed to be constitutionally protected, which the statute would curtail. Cf. Grosjean v. American Press Co., 297 U.S. 233 [56 S.Ct. 444, 80 L.Ed. 660 (1936) ]. We also think petitioner has standing to assert the corresponding rights of its members. See NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 458-460 [78 S.Ct. 1163, 1169-1171]; Bates v. City of Little Rock, 361 U.S. 516, 523, n. 9 [80 S.Ct. 412, 416-417, n. 9, 4 L.Ed.2d 480 (1960) ]; Louisiana ex rel. Gremillion v. NAACP, 366 U.S. 293, 296 [81 S.Ct. 1333, 1335-1336, 6 L.Ed.2d 301 (1961) ].
 
 
 41
 We reverse the judgment of the Virginia Supreme Court of Appeals. We hold that the activities of the NAACP, its affiliates and legal staff shown on this record are modes of expression and association protected by the First and Fourteenth Amendments which Virginia may not prohibit, under its power to regulate the legal profession, as improper solicitation of legal business violative of Chapter 33 and the Canons of Professional Ethics.
 
 
 42
 Id. at 428-29, 83 S.Ct. at 335-36.
 
 
 43
 This court has upheld constitutional claims of free speech and associational rights arising from activities of the National Commodities and Barter Association and the Exchange in Voss v. Bergsgaard, 774 F.2d 402 (10th Cir.1985). In that case, an order quashing warrants for the production of records was upheld. We noted that:
 
 
 44
 The warrants' overbreadth is made even more egregious by the fact that the search at issue implicated free speech and associational rights. The NCBA is an organization which, in its own words, "espouses dissident views on the federal tax system and advocates a return to currency backed by gold and/or silver." The search warrant authorized the seizure of indicia of membership in or association with the NCBA as well as books expressing its particular political ideology.
 
 
 45
 Id. at 405.
 
 
 46
 Here, in dismissing the First Amendment claim the district judge said that the "type of chilling effect mentioned by plaintiffs in the complaint is not particularly specific. It describes only very general ways in which NCBA's rights are implicated." 790 F.Supp. at 236. The judge also felt this would be a subjective chill, not actionable in light of Laird v. Tatum, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972). Id. at 236. We disagree. The complaint repeatedly alleged specific ways in which NCBA's rights were implicated, starting with the seizures allegedly conducted by defendants Bergsgaard, Henry, Watkins and others in Denver at locations including the plaintiffs' headquarters, on April 5, 1985; it was averred that items seized "included membership lists and other records ... brochures and legal files belonging to NCBA/NCE." p 7 (emphasis added). Similar averments are made about defendant Urbanski respecting the April 5, 1985, search and seizures at Alexandria, South Dakota, where items seized "included bank records and membership lists belonging to plaintiffs." p 10 (emphasis added). See also pp 12 and 15. It is also important to keep in mind the Court's statements in NAACP v. Alabama "that the production order [for membership lists, inter alia ], in the respects here drawn in question, must be regarded as entailing the likelihood of a substantial restraint upon the exercise by petitioner's members of their right to freedom of association." 357 U.S. at 462, 78 S.Ct. at 1172.
 
 
 47
 Nor does Laird v. Tatum, cited by the district judge, support the dismissal of the complaint. In Laird, the Supreme Court identified the issue presented as whether a federal claim is made out "by a complainant who alleges that the exercise of his First Amendment rights is being chilled by the mere existence, without more, of a governmental investigative and data-gathering activity that is alleged to be broader in scope than is reasonably necessary...." 408 U.S. at 10, 92 S.Ct. at 2324. The Court held a federal claim was not stated in such circumstances. Id. However, the instant complaint plainly alleges specific actions by governmental employees of a different character--numerous alleged seizures of membership lists and other property belonging to the NCBA, not the "mere existence, without more, of a governmental investigative and data-gathering activity...." 790 F.Supp. at 236.
 
 
 48
 Further, the district judge said that the First Amendment claim fails to set forth particular injuries suffered by the plaintiffs themselves and offers only the general allegation that the rights of the NCBA members were chilled by the defendants' conduct; that it is not clear how this interest belongs to the NCBA and not to its individual members. The judge pointed out that claims of individual members were dismissed in the previous action, and that the dismissal was upheld by the Tenth Circuit. 790 F.Supp. at 23. We are convinced, however, that NAACP v. Alabama demonstrates that an association itself may assert "more appropriately the rights of its members...." (357 U.S. at 458, 78 S.Ct. at 1170), and resist inquiry into its membership lists. See also NAACP v. Button, 371 U.S. at 428, 83 S.Ct. at 335 ("petitioner has standing to assert the corresponding [associational] rights of its members").
 
 
 49
 The judge also said that there is "no allegation in the complaint that the material belonged to the NCBA, only that it concerned the NCBA--in the nature of its membership lists, etc." 790 F.Supp. at 236. We note, however, that the complaint did aver that specific defendants--Bergsgaard, Henry, Watkins and others searched three locations in Denver, including plaintiffs' headquarters; that a large volume of documents and personal property was seized at each site; and that "[t]he items seized included membership lists, and other records ... belonging to NCBA/NCE." p 7 (emphasis added). Similar allegations were made in p 10. Other averments were made in terms of seizing "NCBA/NCE membership mailing labels," p 9, "NCBA/NCE membership lists," p 12, and "NCBA membership information," p 15. These allegations stand on the same footing, in our opinion, as where membership lists taken allegedly belonged to the NCBA. Moreover, compelled disclosure of membership records of NCBA from a third party such as a bank was involved in In Re First Nat. Bank, Englewood, Colorado, 701 F.2d 115 (10th Cir.1983), and we nevertheless reversed the enforcement order, noting that "[t]he chilling effect of a summons served by an IRS agent to obtain membership records of a tax protester group has been said to be 'readily apparent.' " Id. at 118 (quoting United States v. Grayson County State Bank, 656 F.2d 1070, 1074 (5th Cir.1981), cert. denied, 455 U.S. 920, 102 S.Ct. 1276, 71 L.Ed.2d 460 (1982)).
 
 
 50
 Lastly, the district judge said that nowhere is the source of the alleged chill on associational rights identified; that there is no reference concerning what activities the defendants engaged in which resulted in the chilling of associational rights. 790 F.Supp. at 236-37. We disagree. The complaint averred specifically searches and seizures by named defendants, on particular dates and in particular places, where NCBA membership information was seized. And, as we said in In Re First Nat. Bank, Englewood, Colorado, the chilling effect of obtaining such membership records "has been said to be 'readily apparent.' " 701 F.2d at 118.
 
 
 51
 In sum, we hold that the Third Amended Complaint did state a First Amendment Bivens claim as to the defendants named in the margin,[3] while we conclude that the dismissal was correct as to the other defendants. We therefore reverse the judgment of dismissal as to that claim against the defendants named in note 3, and remand to the district court for further proceedings where plaintiffs may seek to establish their claim.[4]
 
 C
 
 52
 We also hold that the Third Amended Complaint did state a Fourth Amendment Bivens claim as to defendants named in the margin,[5] while we conclude that the dismissal was correct as to the other defendants. For example, it was averred in pp 7 and 8 that IRS Agents Bergsgaard, Henry and Watkins, and others unnamed, procured search warrants and searched three locations in Denver, including NCBA's headquarters, and seized membership lists and a large volume of documents and personal property at each site; there was a Fed.R.Crim.P. 41(e) motion for return of the seized property; the Colorado federal district court and our court of appeals found that the searches violated the First and Fourth Amendment rights of the movants, members of NCBA; and the return of all seized property was ordered. See Voss v. Bergsgaard, 774 F.2d 402, 406 (10th Cir.1985). The district judge there held, and we agreed, that the warrants involved were constitutionally defective because they violated the particularity requirement of the Fourth Amendment.[6]
 
 
 53
 It was also alleged, p 9, that defendant Henry and other unnamed persons executed a warrant on April 5, 1985, in Edina, Minnesota, which "suffered from the same defective language" as had the Colorado warrants. This search was allegedly executed on the person of an NCBA member and he was carrying records of NCE and NCBA/NCE mailing labels. p 9. It was alleged that an April 5, 1985, search in Alexandria, South Dakota, was conducted by defendant Urbanski; that the seizure of most property taken was from areas of the residence not authorized by the warrant to be searched; and items seized included "bank records and membership lists belonging to plaintiffs." p 10. A claim was alleged as to search and seizure of NCBA/NCE membership information and records at Bothell, Washington, on October 16, 1985, by defendants Keller and Brousseau. It was alleged that this search and seizure "was legally indistinguishable from the searches and seizures held unconstitutional in Voss v. Bergsgaard, supra." p 13.
 
 
 54
 We are persuaded that sufficient Fourth Amendment Bivens claims were averred against the defendants listed in note 5, supra. Therefore, dismissal of the complaint as to the Fourth Amendment claims against them was also in error. See Voss v. Bergsgaard, 774 F.2d 402 (10th Cir.1985). We reverse the dismissal of the claim as to those defendants and remand it for further proceedings below.
 
 D
 
 55
 In further support of their constitutional claims, plaintiffs allege that wrongful jeopardy assessments were made against NCBA. They state that defendant C.D. Switzer and defendants John Doe and Mary Roe were involved in those proceedings and should have known they were acting beyond the scope of their authority. pp 36-39, Third Amended Complaint. In NCBA I, we held that the NCBA did not state a Bivens claim under the Fifth Amendment or the Internal Revenue Code for the wrongful assessments. NCBA I, 886 F.2d at 1248. We reasoned that "the NCBA has all sorts of rights against an overzealous officialdom, including, most fundamentally, the right to sue the government for a refund if forced to overpay taxes, and it would make the collection of taxes chaotic if a taxpayer could bypass the remedies provided by Congress simply by bringing a damage action against [government employees]." Id. at 1248 (internal quotations and citations omitted).
 
 
 56
 This reasoning is equally applicable to the claim grounded on the allegations of wrongful jeopardy assessments here under the First and Fourth Amendments. In light of the remedies afforded elsewhere, we decline to recognize a First or Fourth Amendment Bivens remedy based on the allegations of wrongful jeopardy assessments made by the instant complaint, see id.; see also Schweiker v. Chilicky, 487 U.S. 412, 421-23, 108 S.Ct. 2460, 2466-68, 101 L.Ed.2d 370 (1988); Bush v. Lucas, 462 U.S. 367, 390, 103 S.Ct. 2404, 2417-18, 76 L.Ed.2d 648 (1983); Cameron v. Internal Revenue Serv., 773 F.2d 126, 129 (7th Cir.1985), and affirm the dismissal of those allegations.
 
 III
 
 57
 Because we hold that the Third Amended Complaint did state First and Fourth Amendment Bivens claims, we turn to the issue of qualified immunity which was raised below by the defendants, and which is briefed to some extent on appeal.[7] Given the district court's other rulings, it did not find it necessary to address the issue of qualified immunity. Although the issue was not ruled on below, we "may" still resolve it. See Duncan v. Gunter, 15 F.3d 989, 992 (10th Cir.1994); see also Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817-18, 86 L.Ed.2d 411 (1985); Greiss v. Colorado, 841 F.2d 1042, 1047 (10th Cir.1988) (per curiam). However as we explain later, we decide only one specific question on qualified immunity--whether the defendants' alleged conduct violated clearly established First Amendment law. Otherwise, we do not pass on the qualified immunity defense which was not ruled on below. Bivens, 403 U.S. at 397-98, 91 S.Ct. at 2005-06.[8]A
 
 
 58
 The defendants contend that the plaintiffs have failed to demonstrate that the defendants violated any clearly established First Amendment rights. See Brief of Appellees at 43-49. We disagree. As detailed above, the plaintiffs' complaint alleges repeated searches and seizures of materials, including membership lists, which come within the clear parameters of First Amendment rights of speech and association. Government actions that "may have the effect of curtailing the freedom to associate [have been] subject to the closest scrutiny," since at least 1958 when the Supreme Court decided NAACP v. Alabama, 357 U.S. at 460-61, 78 S.Ct. at 1171. See also NAACP v. Button, 371 U.S. at 428-29, 83 S.Ct. at 335-36, and cases discussed in Part II-B, supra.[9] As stated by the District of Columbia Circuit in 1984: "[t]he constitutional right of association of the kind in which plaintiffs were engaged was well known, as was the degree of protection from direct interference that such lawful association was to be accorded." Hobson v. Wilson, 737 F.2d 1, 29 (D.C.Cir.1984), cert. denied sub nom. Brennan v. Hobson, 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985).
 
 
 59
 At the time the specific seizures of membership lists and records allegedly occurred, it was clear "that a reasonable [government employee] would understand that what he [wa]s doing violated[d those] right[s]." Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). There is no way those "actions could reasonably have been thought consistent with the [First Amendment] rights they are alleged to have violated," id. at 638, 107 S.Ct. at 3038, qualified immunity does not protect those who knowingly violate the law. See id.; Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).[10]
 
 
 60
 The Supreme Court has, however, made clear a basis for excusing action by government employees, even if the law was clearly established. It has held that although the law was clear, "[n]evertheless, if the official pleading the defense claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard, the defense should be sustained." Harlow v. Fitzgerald, 457 U.S. 800, 819, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). To be deemed extraordinary circumstances, "[t]he circumstances must be such that the defendant was so prevented from knowing that his actions were unconstitutional that he should not be imputed with knowledge of an admittedly clearly established right." V-1 Oil v. Wyoming Dep't of Envtl. Quality, 902 F.2d 1482, 1488 (10th Cir.) (internal quotations and citations omitted), cert. denied, 498 U.S. 920, 111 S.Ct. 295, 112 L.Ed.2d 249 (1990), and cert. denied, 498 U.S. 920, 111 S.Ct. 295, 112 L.Ed.2d 249 (1990). However, the "extraordinary circumstances" issue was not adequately developed in the record or briefs before us,[11] and we do not pass on that issue. Both because the question was not considered by the district judge and because it is not properly presented to us, the issue is not appropriate for decision by us and we therefore remand it to the district court for further proceedings:[12]
 
 
 61
 We leave to the district court the exact procedure by which this opportunity for pleading and proof shall be provided. And of course, we must leave to that court for first instance consideration whether any circumstance advanced could, if proved, be deemed sufficiently "extraordinary," under the general test we have suggested, to excuse officer ignorance of the clearly established right at issue.
 
 
 62
 Pritchett v. Alford, 973 F.2d 307, 316 (4th Cir.1992) (footnote omitted).
 
 B
 
 63
 With respect to plaintiffs' Fourth Amendment claims, the defendants also argue that they did not violate clearly established law in executing the warrants. It is beyond peradventure that when the warrants were allegedly executed in 1985 and 1986,[13] the general rule was clearly established that the Constitution required that warrants state with particularity the place to be searched and the persons or things to be seized, U.S. Const. amend. IV; Coolidge v. New Hampshire, 403 U.S. 443, 467, 91 S.Ct. 2022, 2038-39, 29 L.Ed.2d 564 (1971). Stanford v. Texas, 379 U.S. 476, 485, 85 S.Ct. 506, 511-12, 13 L.Ed.2d 431 (1965); Marron v. United States, 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927); see also United States v. Robertson, 21 F.3d 1030, 1033 (10th Cir.1994) (citing pre-1986 case law); United States v. Leary, 846 F.2d 592, 600 (10th Cir.1988) (same); Voss, 774 F.2d at 404 (same), and that "as to what is to be taken, nothing is left to the discretion of the officer executing the warrant", Stanford, 379 U.S. at 485, 85 S.Ct. at 512 (internal quotations and citation omitted).
 
 
 64
 At the time of the searches and seizures in question here, some decisions expressed a different view than our Voss opinion adopted. As noted previously, in one case the Ninth Circuit stated that the government there argued that the affidavit for the warrant
 
 
 65
 evidenced a pervasively fraudulent operation which encompassed the entire business and therefore all business-related books, records and equipment constituted instrumentalities of fraud which the Inspectors were properly directed to seize.... We agree.
 
 
 66
 United States v. Offices Known as 50 State Distributing Co., 708 F.2d 1371, 1374 (9th Cir.1983), cert. denied, 465 U.S. 1021, 104 S.Ct. 1272, 79 L.Ed.2d 677 (1984) (upholding a warrant for seizure of lead source material, invoices, sales orders, order forms books ... and other evidence and instrumentalities for numerous on-going violations of Title 18, United States Code, Sec. 1341, etc.) (emphasis in original). Also in United States v. Brien, 617 F.2d 299 (1st Cir.), cert. denied, 446 U.S. 919, 100 S.Ct. 1854, 64 L.Ed.2d 273 (1980), a warrant for seizure of all business records of an enterprise was upheld where the records were accurately described so that no judgment needed to be exercised as to what should be seized. The ruling was premised on a showing that facts presented to the magistrate warranted a strong belief that the company's operation was "solely and entirely" a scheme to defraud and there was probable cause to find "a pervasive scheme to defraud." Id. at 308-09. See also Voss, 774 F.2d at 407 (Logan, J., concurring, and agreeing with views of the First and Ninth Circuit cases which the Voss majority rejected).
 
 
 67
 As part of their qualified immunity argument, the defendants contend that decisions like those of the First and Ninth Circuits, cited above, provided a substantial basis in law for believing that the warrants involved in this case were valid.[14] See Brief for the Appellees at 44-46. However as a threshold matter, for the defendants to invoke the First and Ninth Circuit precedents as a basis for their qualified immunity defense, or to use similar reasoning to defend the warrants executed in the Eleventh Circuit, a factual determination is necessary that the entire NCBA enterprise was engaged in a pervasive fraudulent operation. This is a very narrow exception to the constitutional mandate requiring warrant particularity. The present record does not make any conclusive showing of such facts about NCBA.[15] This important part of the defendants' qualified immunity summary judgment argument must be developed by defendants, if they can, in their papers supporting their summary judgment motion. Therefore the qualified immunity issue with respect to the Fourth Amendment claim is also remanded to the district court.
 
 
 68
 Should the district court conclude on remand that, on the facts developed, the law was clearly established when the allegedly unconstitutional searches occurred, it must then determine whether the agents acted in an objectively reasonable manner consistent with the principles discussed in Malley v. Briggs, 475 U.S. 335, 345, 106 S.Ct. 1092, 1098, 89 L.Ed.2d 271 (1986) and Harlow, 457 U.S. at 818, 102 S.Ct. at 2738, and their progeny. If they did not, then the district court should consider whether "extraordinary circumstances", see Harlow, 457 U.S. at 819, 102 S.Ct. at 2738, existed at the time the warrants were executed so as to excuse their conduct. See supra; see also Pritchett v. Alford, 973 F.2d at 316.IV
 
 
 69
 Accordingly we REVERSE the judgment of dismissal of the action for failure of the Third Amended Complaint to state a First or Fourth Amendment Bivens claim on which relief may be granted as to the defendants named in notes 3 and 5, supra. We AFFIRM the dismissal of the action as to all other defendants. We also AFFIRM the dismissal of the action with respect to all the allegations concerning the jeopardy assessments alleged in the complaint. We REMAND for further proceedings in accord with this opinion.
 
 
 
 [1]
 Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)
 
 
 [2]
 The complaint avers, p 6, that these defendants are: Glenn L. Archer, Assistant Attorney General, Tax Division, Department of Justice; Larry D. Bergsgaard, Special Agent of the IRS; Joseph Brousseau, Special Agent of the IRS; Frank Contos, Jr., Special Agent of the IRS; Lester Furr, Special Agent of the IRS; Patrick Henry, Special Agent of the IRS; Charles Holden, Revenue Agent of the IRS; Paulette G. Johnson, Special Agent of the IRS; John E. Keller, Special Agent of the IRS; Gerald W. Leland, Assistant District Counsel of the IRS; Donald Lewis, Assistant U.S. Attorney; Albert J. Monica, Special Agent of the IRS; Keith Mueller, Special Agent of the IRS; C.D. Switzer, District Director of the IRS in Minnesota; Ronald Urbanski, Special Agent of the IRS; Darryl Watkins, Special Agent of the IRS; Nathan Woodard, Special Agent of the IRS; and Charles Young, Special Agent of the IRS
 We omit from the foregoing enumeration of the defendants, former defendants Gibbs and Egger, who were dismissed by a stipulation below approved by the district judge.
 
 
 [3]
 We conclude that such First Amendment Bivens claims were stated sufficiently to survive the Fed.R.Civ.P. 12(b) motion as to defendants Bergsgaard, Henry and Watkins (see, e.g., pp 7 and 8); defendant Urbanski (see, e.g., p 10); defendant Young (see, e.g., p 12); defendants Keller and Brousseau (see, e.g., p 13); defendant Monica (see e.g., p 15); defendant Switzer (see e.g., p 19); defendant Contos (see e.g., p 31); defendants Holden and Johnson (see, e.g., p 30); and defendant Woodard (see, e.g., p 11). As to the remaining defendants, we affirm the judgment of dismissal for failure of the Third Amended Complaint to state a First Amendment Bivens claim on which relief can be granted
 
 
 [4]
 To establish their First Amendment claim, plaintiffs must prove wrongful conduct by the defendants and that such conduct had a chilling effect on the plaintiffs' organizational activities and associational rights. See In Re First Nat. Bank, Englewood, Colo., 701 F.2d 115, 118-19 (10th Cir.1983); United States v. Citizens' State Bank, 612 F.2d 1091, 1094 (8th Cir.1980). As the Supreme Court has stated:
 The right to associate for expressive purposes is not, however, absolute. Infringements on that right may be justified by regulations adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms.
 Roberts v. United States Jaycees, 468 U.S. 609, 623, 104 S.Ct. 3244, 3252, 82 L.Ed.2d 462 (1984) (citations omitted).
 If a prima facie showing of First Amendment infringement and its detrimental effects is made out, then the defendants may attempt to show in defense that there was a compelling need to obtain the records seized. See Buckley v. Valeo, 424 U.S. 1, 64-66, 96 S.Ct. 612, 656-57, 46 L.Ed.2d 659 (1976) (per curiam); Pleasant v. Lovell, 876 F.2d 787, 804-05 (10th Cir.1989); First National Bank of Tulsa v. United States Department of Justice, 865 F.2d 217, 220 (10th Cir.1989); In Re First Nat. Bank, Englewood, Colo., 701 F.2d at 119; In Re Grand Jury Proceeding, 842 F.2d 1229, 1236 (11th Cir.1988); Citizens' State Bank, 612 F.2d at 1094-95.
 However, as the Supreme Court made clear in Buckley, 424 U.S. at 64, 96 S.Ct. at 656, a compelled disclosure making significant encroachments on First Amendment rights "cannot be justified by a mere showing of some legitimate governmental interest. Since NAACP v. Alabama [the Court has] required that the subordinating interests of the state must survive exacting scrutiny." (footnote omitted). Such defensive matter as a compelling governmental interest may be considered on remand. At this juncture we are merely holding that it was error to dismiss the complaint for failure to state a First Amendment Bivens claim as to the defendants we listed in note 3, supra.
 
 
 [5]
 The Fourth Amendment Bivens claim was sufficiently alleged as to defendants Bergsgaard, Henry and Watkins. See, e.g., pp 7 and 8; defendant Henry, see, e.g., pp 9 and 16; defendant Urbanski, see, e.g., p 10; defendants Keller and Brousseau, see, e.g., p 13; defendant Woodard, see, e.g., pp 11 and 16; defendant Switzer, see, e.g., p 19; and defendant Young, see, e.g., pp 12 and 16. As to the remaining defendants, we affirm the judgment of dismissal for failure of the Third Amended Complaint to state a Fourth Amendment Bivens claim on which relief can be granted
 
 
 [6]
 The Fourth Amendment provides in part that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV
 
 
 [7]
 The issue of qualified immunity was urged below as one of the grounds in support of the defendants' "Motion To Dismiss Plaintiffs' Third Amended Complaint Pursuant To Federal Rule Of Civil Procedure 12(b) Or, In The Alternative, For Summary Judgment Pursuant To Federal Rule Of Civil Procedure 56." On appeal, the government's Brief for the Appellees has an extended discussion of the issue. Brief for the Appellees at 40-50. The Appellants' Reply Brief has some discussion which indirectly treats this issue by presenting long-standing case law supporting their constitutional claims
 
 
 [8]
 We are mindful that the "entitlement [to qualified immunity] is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Mitchell, 472 U.S. at 526, 105 S.Ct. at 2815 (emphasis in original). Our determination not to attempt disposition of the qualified immunity defense and our remand of it are not inconsistent with this principle. We are not remanding with directions for trial, and our declining to pass on this issue because of the state of the record and briefing and lack of prior consideration of it merely sends the issue back where it may be reurged below by the defendants as a basis for summary judgment, with a properly briefed and developed presentation
 
 
 [9]
 For example, in Garcia by Garcia v. Miera, 817 F.2d 650, 658 (10th Cir.1987), cert. denied, 485 U.S. 959, 108 S.Ct. 1220, 99 L.Ed.2d 421 (1988), we noted that the Supreme Court's pronouncements in Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), should have put school officials on notice that excessive corporal punishment could deny students substantive due process. This was despite the fact that the Supreme Court had, in another case, expressly refused to answer the same substantive due process question. See Ingraham v. Wright, 430 U.S. 651, 679 n. 47, 97 S.Ct. 1401, 1416 n. 47, 51 L.Ed.2d 711 (1977). It should have thus been clear, at least from the time that NAACP v. Alabama was decided that governmental intrusion into lawful political organizations by actions to obtain membership lists with the resulting discouragement of membership would violate the constitution, despite the fact that cases such as Hobson v. Wilson were not decided until much later
 
 
 [10]
 The defendants rely on In Re Grand Jury Proceeding, 842 F.2d 1229 (11th Cir.1988), in support of their qualified immunity defense to the First Amendment claim. In particular, they cite the comment in that opinion that the NCBA exists both to promote political opinions and to provide financial services, not warranting protection of the First Amendment; and that the case law provides little specific guidance on the level of protection given to organizations with dual or multiple purposes like NCBA. Id. at 1234. See Brief for the Appellees at 48
 While In Re Grand Jury Proceeding did not decide a qualified immunity issue, the statements cited arguably support a qualified immunity contention. The holding in In Re Grand Jury Proceeding is instructive. In that case the Eleventh Circuit held that a compelling governmental interest was established to investigate possible criminal violations of the tax laws. 842 F.2d at 1236. This much was clear, despite other unsettled law discussed. We likewise recognize the defendants' right to show a compelling governmental interest as a justification for their actions. See note 4, supra. Thus in proper context, In Re Grand Jury Proceeding does not undermine our basic holding that protection of associational rights against conduct alleged here was clearly established before April 1985.
 
 
 [11]
 There is a brief discussion in the defendants' brief, p. 49, note 27, claiming reliance by several named defendants on advice of counsel in applying for the search warrants. Harlow is not discussed. The plaintiffs-appellants' briefs on appeal do not discuss the issue
 
 
 [12]
 This determination concerning "extraordinary circumstances" must be made with respect to each of the defendants
 
 
 [13]
 Several searches allegedly occurred in April 1985, see pp 7, 9, 10 and 11, Third Amended Complaint; some were alleged to have occurred in May 1986, p 14, and others in June 1986, p 15, and some on October 16, 1985, p 12
 While the October 16, 1985, searches alleged to have occurred in Bothell, Washington, and in Orange County, California, came some two weeks after Voss held, on September 30, 1985, that the Colorado warrants were invalid under the particularity requirement of the Fourth Amendment, Voss did not follow the same rule as did the Ninth Circuit at that time. Instead, the Ninth Circuit had a rule more favorable to the government that where there is probable cause to believe that an enterprise has engaged in a pervasively fraudulent operation which encompassed the entire business, all of its business related records and equipment may be seized as instrumentalities of fraud. See United States v. Offices Known as 50 State Distributing Co., 708 F.2d 1371, 1374 (9th Cir.1983), cert. denied, 465 U.S. 1021, 104 S.Ct. 1272, 79 L.Ed.2d 677 (1984). Thus, the Voss decision would not demonstrate clearly established law concerning the seizures allegedly conducted on October 16, 1985, in the Ninth Circuit.
 
 
 [14]
 We consider these cases from other circuits because in deciding a qualified immunity issue we use our full knowledge of our own, and other relevant, precedents. Elder v. Holloway, --- U.S. ----, ----, 114 S.Ct. 1019, 1023, 127 L.Ed.2d 344 (1994) (citing Davis v. Scherer, 468 U.S. 183, 192 n. 9, 104 S.Ct. 3012, 3018 n. 9, 82 L.Ed.2d 139)
 
 
 [15]
 The affidavits which appear in the Opening Brief Appendix, and which underlie the warrants at issue here, have been examined. They make repeated assertions of activities by persons working for or in conjunction with NCBA to attempt to frustrate tax law enforcement. They do not, however, demonstrate that the entire NCBA and NCE organization was involved solely in pervasive fraudulent operations. See Bergsgaard, Keller, Henry, Woodard, Furr and Brousseau affidavits. Moreover, the defendants themselves have relied on the Eleventh Circuit's conclusion in 1988 that "[a]t the very least, NCBA exists both to promote its members' political opinions and to provide the members with financial services not warranting the protection of the first amendment." In Re Grand Jury Proceeding, 842 F.2d at 1234. This undercuts the defendants' assertion that the NCBA was devoted entirely to pervasive fraudulent operations so that they could reasonably have believed that the warrants at issue here were valid. Brief for the Appellees at 45-46
 Without making a determination on this point about NCBA's activities in 1985 and 1986, and their bearing on the availability of the qualified immunity defense, we note that the record is such that this facet of the qualified immunity issue respecting the Fourth Amendment claim must be remanded as part of that issue.