Mirah DOW, Plaintiff,

v.

TERRAMARA, INC.; Don Morrill;
James Bryan; and Leota
Albright, Defendants.

No. 90–1412–PFK.

United States District Court,
D. Kansas.

Oct. 6, 1993.

Jack Focht, Wichita, KS, for plaintiff.

Barbara Scott Girard, Wichita, KS, for defendants.

### MEMORANDUM AND ORDER

PATRICK F. KELLY, Chief Judge.

This matter comes before the court on defendants' motion for summary judgment. Pursuant to Fed.R.Civ.P. 56, defendants assert the plaintiff cannot prove any state action, as required for her 42 U.S.C. § 1983 claim, and therefore it should be dismissed. Defendants also move for the court to decline to exercise jurisdiction over plaintiff's remaining state law claims and dismiss this suit. On September 30, 1993, the court heard the parties' oral arguments and then adjourned to review and consider the arguments. The court is now ready to make the following findings of fact and conclusions of law.

Defendant Terramara, Inc., is a private, nonprofit 501(c) corporation in El Dorado, Kansas, that was originally incorporated on May 26, 1967. (Defs.' Memo., Ex. C, Articles of Incorporation.) Terramara provides a work activity center, housing, and other services for adult, mentally handicapped persons in Butler, Greenwood, and Elk counties. (Defs.' Memo., Ex. C, Morrill Depo. at 15–16 & Ex. D, Morrill Aff.) Terramara has con-

tracts with these three counties to provide its services to the public. It operates on an approximate $1,800,000.00 annual budget which includes $190,000.00 from county mill levies, $930,000.00 from state funds, and about $327,000.00 from federal block grants. Only approximately $115,000.00 of the annual budget is from nongovernment monies. (Pltf.'s Memo., Morrill Depo. at 22–25.) Terramara is licensed and regulated by the Kansas Department of Social and Rehabilitative Services as a community mental health center and community facilities for the mentally retarded, pursuant to K.S.A. § 19–4001 *et seq.*

A board of directors, made up of six members and two alternates, oversees Terramara. New board members are selected and approved by the existing board members. All board members volunteer their services. Defendant Don Morrill is Terramara's executive director and has the authority to hire and fire. (Defs.' Memo., Ex. D, Morrill Aff., & Ex. F, Morrill Depo. at 137.)

Plaintiff Mirah Dow was hired by Terramara to fill the position of marketing representative in August 1988. (Defs.' Memo., Ex. A, Morrill Depo. at 95.) Defendant James Bryant, Terramara's work activity director, was Dow's immediate supervisor. (Defs.' Memo., Ex. F, Morrill Depo. at 137.) Defendant Leota Albright also worked and continues to work for Terramara as director of client services. (Pltf.'s Memo., Albright Depo. at 7.)

On September 27, 1988, Dow's employment was terminated. Executive director Morrill made the ultimate decision to fire her and at no time prior to that date did he consult with any board member regarding Dow's termination. (Defs.' Memo., Ex. D, Morrill Aff.) The following day, on September 28, 1993, Dow and her attorney, Ray Connell, attended a meeting at Terramara. Robert M. Bond, Terramara's attorney; Morrill; Bryan; Albright; Curtis Roby, a Terramara supervisor; and Andy McIhaney, member of the board of directors, were also in attendance. (Pltf.'s Memo., Ex. B, Connell Aff.) On No-

vember 14, 1993, Bond sent Connell a letter informing him that "Terramara, Inc. and its officers and directors have reviewed Mrs. Dow's termination and hereby affirm the decision made earlier to terminate her." (Pltf.'s Memo., Ex. C.)

Dow brought this action against defendants claiming her termination amounted to retaliatory discharge. She further claimed the defendants had: (1) violated 42 U.S.C. §§ 1983, 1985, and 1986 by violating her First Amendment rights; (2) violated 42 U.S.C. § 1983 by violating her right to due process of law as guaranteed by the Fourteenth Amendment; (3) wrongfully discharged her in violation of Kansas public policy and the laws of the state; and (4) breached her employment contract. (Complaint at 3–5.) Defendants moved to dismiss Dow's claims of violation of 42 U.S.C. §§ 1983, 1985, and 1986. On December 4, 1992, this court granted defendants' motion with regard to Dow's §§ 1985 and 1986 claims and denied the motion to dismiss Dow's § 1983 claim.

The defendants argue that their actions in regard to the termination of Dow were not performed under color of state law as required by 42 U.S.C. § 1983. Section 1983 provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Congress enacted § 1983 to create "a remedy as broad as the protection of the Fourteenth Amendment affords the individual." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 934, 102 S.Ct. 2744, 2752, 73 L.Ed.2d 482 (1982). The "state action" requirement of the Fourteenth Amendment is identical to the "under color of state law" requirement of § 1983.[1] *Id.* at 929, 102 S.Ct. at 2749.

---

1. Because in most circumstances § 1983 and the Fourteenth Amendment requirements are identical, the analysis of causes of action brought under both are identical. Thus, Fourteenth Amend-

A trio of cases were decided by the United States Supreme Court on the same day, June 25, 1982, which thoroughly analyze § 1983, the Fourteenth Amendment, and their relationship to each other. They are: *Rendell–Baker v. Kohn*, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982); *Lugar, supra*; and *Blum v. Yaretsky*, 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982). The defendants first cite *Rendell–Baker* for support. In that case, former employees of a privately owned and operated school that received at least 90% of its annual budget from public funds brought suit against the school under 42 U.S.C. § 1983 for alleged violations of their First, Fifth, and Fourteenth Amendment rights. The school was subject to detailed state regulations, including personnel policies, as well as regulations of two cities that contracted for the school's services. *Rendell–Baker*, 457 U.S. at 832–33, 102 S.Ct. at 2766–67. The Court stated the core issue was whether "the alleged infringement of federal rights [is] 'fairly attributable to the State?'" *Id.* 457 U.S. at 838, 102 S.Ct. at 2769 (quoting *Lugar*, 457 U.S. at 937, 102 S.Ct. at 2753).

The Court stated the school's otherwise private decision could be attributed to the state if the state "'exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State.'" *Id.* 457 U.S. at 840, 102 S.Ct. at 2770 (quoting *Blum*, 457 U.S. at 1004, 102 S.Ct. at 2785). Next, the Court considered whether § 1983's under-color-of-state-law requirement was satisfied by the fact that the school was subject to state regulation. The Court reasoned that only if the state's regulation compelled or influenced the school's decision would § 1983's requirement be met, even if the state regulation was "extensive and detailed." *Id.* 457 U.S. at 841, 102 S.Ct. at 2771. The Court's third consideration was whether "the function performed [by the school] has been 'traditionally the exclusive prerogative of the State.'" *Id.* at 842, 102 S.Ct. at 2771 (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 353, 95 S.Ct.

449, 454, 42 L.Ed.2d 477 (1974)). The Court held that although education of high school maladjusted students is a public function, it is in no way the exclusive province of the state.

The Court's final consideration was whether there was a "symbiotic relationship" between the school and the state. The Court noted that such a relationship did exist in *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961), where a restaurant located in a public parking garage refused to serve African–Americans. In *Burton*, the evidence showed the restaurant, and therefore the state, profited from the restaurant's discriminatory acts. The Court, however, in *Rendell–Baker*, found no such symbiotic relationship. Thus, the Court held the plaintiffs had failed to state a claim pursuant to 42 U.S.C. § 1983.

Defendants also cite *Blum*, in which nursing home residents brought suit under 42 U.S.C. § 1983 alleging the defendant private nursing homes' procedures for discharging or transferring them to lower levels of care, with the result that their Medicaid benefits were terminated or reduced, violated their due process rights. The Court again sought to determine whether the alleged deprivation by the nursing homes had some relationship or nexus to the state. In reference to this required nexus, the Court stated:

> The purpose of this requirement is to assure that constitutional standards are invoked only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains.

*Blum*, 457 U.S. at 1004, 102 S.Ct. at 2785. As discussed in *Rendell–Baker*, the Court also considered whether the state exercised coercive power and whether the nursing homes were performing a function or exercising powers that are traditionally the exclusive prerogative of the state. Ultimately, the Court held the decisions to transfer or release the plaintiffs were made by private medical professionals who were not acting

---

ment cases provide guidance for the resolution of § 1983 cases and vice versa. The only distinction between the two arises when there is joint

action by private parties and state officials. *Lugar*, 457 U.S. at 928 n. 8, 102 S.Ct. at 2749 n. 8 (1982).

under color of state law. *Id.* 457 U.S. at 1012, 102 S.Ct. at 2789.

■ Defendants further contend members of Terramara's board of directors are not public officials as alleged by Dow. Defendants stress that new board members are selected by the existing board and are not elected by the public or appointed by county commissioners. Thus, any action taken by the board of directors cannot be characterized as state action. Even assuming that members of the board of directors are public officials, the mere presence of public officials on the board alone is not sufficient to prove state action. *Gilmore v. Salt Lake Community Action Program,* 710 F.2d 632, 638–39 (10th Cir.1983) (although one-third of board was made up of public officials and board formulated personnel policies, plaintiff must show termination decision "reflected a governmental policy or decision"). The plaintiff must allege, and ultimately prove, there was state involvement "in the *specific conduct* of which he complains." *Loh–Seng Yo, M.D. v. Cibola General Hosp.,* 706 F.2d 306, 308 (10th Cir.1983); *see also MacDonald v. Eastern Wyoming Mental Health Center,* 941 F.2d 1115, 1118 (10th Cir.1991) (plaintiff must show "state influence, involvement, or control over the personnel decisions" being challenged).

■ In response, Dow contends the relationship between the defendants and the state "is simply far greater" than and can be distinguished from *Rendell–Baker.* (Pltf.'s Memo. at 6.) Dow claims the statutory scheme found at K.S.A. § 19–4001 *et seq.* amounts to the legislature substituting community mental health centers, such as Terramara, for state mental health institutions. For support of this statement, Dow points out that nine clients were transferred to Terramara from the Norton State Hospital when that institution closed in 1988. (Pltf.'s Memo., Morrill Depo. at 27–28.) Furthermore, Terramara received a governmental grant for accepting these clients.

Dow cites *Lugar,* which establishes a two-part test for determining whether a party is a state actor for purposes of a § 1983 action. In that case, the plaintiff was indebted to defendant Edmondson Oil Company and

Edmondson Oil sued to collect the debt. Ancillary to that action, Edmondson Oil sought a prejudgment attachment as allowed by state law. A clerk of the state court issued a writ of attachment which was then executed by the county sheriff. A state court later ordered the attachment dismissed because Edmondson Oil had failed to establish the statutory grounds for attachment alleged in the petition. The plaintiff then filed a § 1983 suit against Edmondson Oil and its president. *Lugar,* 457 U.S. at 924–25, 102 S.Ct. at 2746–47.

In *Lugar,* the Court set out the following two-part test:

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible.... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State. Without a limit such as this, private parties could face constitutional litigation whenever they seek to rely on some state rule governing their interactions with the community surrounding them.

457 U.S. at 937, 102 S.Ct. at 2753. The Court explained that the resolution of the second part of the test is based on the factors or tests discussed in other cases such as *Rendell–Baker* and *Blum* (i.e., "public function" test; "state compulsion" test; "nexus" test; and "joint action" test).

In regard to the plaintiff's claim that Edmondson Oil violated his rights found in the Due Process Clause and therefore was liable under § 1983, the Court found the plaintiff was in fact challenging the state statute as procedurally defective under the Fourteenth Amendment. The Court then stated:

> While private misuse of a state statute does not describe conduct that can be attributed to the State, the procedural scheme created by the statute obviously is

the product of state action. This is subject to constitutional restraints and properly may be addressed in a § 1983 action, *if* the second element of the state-action requirement is met as well.

*Lugar*, 457 U.S. at 941, 102 S.Ct. at 2755 (emphasis added). The Court explained that it has "consistently held that a private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a 'state actor' for purposes of the Fourteenth Amendment." *Id.*

Dow also cites other cases that have followed the rules discussed in *Lugar*. *See, e.g., Dennis v. Sparks*, 449 U.S. 24, 27–28, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980) ("Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 actions"); *Jackson v. Pantazes*, 810 F.2d 426, 430 (4th Cir.1987) (symbiotic relationship between bail bondsman and the state renders bail bondsman's conduct state action); *Bailey v. Kenney*, 791 F.Supp. 1511, 1526 (D.Kan.1992) (the court found bail bondsman acted pursuant to state statute and was assisted by police officers, and therefore held bail bondsman acted under color of law).

Finally, Dow contends the legislature, by enacting K.S.A. § 19–4001 *et seq.*, has created a statutory scheme that replaced state mental health institutions with community health centers such as Terramara. This allegation is completely unfounded and without support. Obviously the State of Kansas continues to operate state mental health institutions despite the closing of Norton State Hospital.

The facts material to this issue are not in dispute. Terramara's executive director, Don Morrill, made the decision to terminate Dow's employment. Dow claims the board influenced this decision but is only able to point to the fact that the board later affirmed the decision. The evidence, however, does not support the allegation that the board is a "state actor" or acted "under color of state law." Additionally, Dow has failed to prove the board in some way exercised coercive power and influenced Morrill's decision to terminate Dow's employment.

The facts here are most like those present in *Rendell–Baker*. Terramara receives most of its funding from governmental sources and is subject to extensive state regulation. State regulation, however, does not make Terramara and the other defendants state actors unless the regulation compelled or influenced the decision to terminate Dow. Although Terramara performs a public function, it cannot be said that providing services and housing to mentally handicapped adults has been "traditionally the *exclusive* prerogative of the State." Dow claims Terramara has a symbiotic relationship with Butler, Greenwood, and Elk Counties because these counties contracted for Terramara's services. Unlike *Burton*, these counties did not profit financially from Terramara's alleged violation of Dow's rights. The court finds Dow has failed to state a claim for relief under 42 U.S.C. § 1983 because Terramara's termination of her employment was not made "under color of state law."

Next, the defendants argue that if Dow's § 1983 claim is dismissed, then the court should decline jurisdiction over her pendent state claims and dismiss the suit. The decision of whether to exercise jurisdiction is within the district court's discretion. In fact it is expressly authorized to decline supplemental jurisdiction if the court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). In response, Dow contends the defendants will not be harmed if the court retains jurisdiction over the pendent claims.

■ Unless the district court is aware of compelling reasons weighing in favor of exercising supplemental jurisdiction, it should dismiss the suit because notions of comity and federalism demand that a state court try its own lawsuits. *Thatcher Enterprises v. Cache County Corp.*, 902 F.2d 1472, 1478 (10th Cir.1990). When making such a decision, the district court should consider the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness. *Id.; see also Siefkes v. Nichols*, 788 F.Supp. 477, 481–82 (D.Kan.1992) (failure to state a claim under § 1983 prompted court to dismiss pendent state law claims).

The court finds there is no compelling reason to exercise supplemental jurisdiction over Dow's wrongful discharge and breach of employment contract claims. Therefore, these claims shall be dismissed.

IT IS THEREFORE ORDERED this 6th day of October, 1993, that defendant's motion for summary judgment (Dkt. No. 57) is granted. Plaintiff's remaining state law claims are dismissed.