Michael MEDINA, Plaintiff,

v.

CITY OF OSAWATOMIE, Kansas; John D. Cragg, Sr.; and Larry Buchanan, Defendant.

No. 97–2178–JWL.

United States District Court, D. Kansas.

Jan. 27, 1998.

Mark A. Buchanan, The Brown Law Firm, Kansas City, MO, Carston C. Johannsen, Gould Law Offices, Chtd., L.L.C., Lenexa, KS, for Richard Alonzo, Michael Medina.

Michael K. Seck, Fisher, Patterson, Sayler & Smith, Overland Park, KS, for City of Osawatomie, Kansas.

Claire Renee Mattan, Morrison & Hecker L.L.P., Kansas City, MO, Alan L. Rupe, Morrison & Hecker L.L.P., Wichita, KS, Robert L. Bezek, Jr., Bezek, Lowry & Hendrix, Ottawa, KS, for John D Cragg, Sr, in his individual and official capacities.

Claire Renee Mattan, Morrison & Hecker L.L.P., Kansas City, MO, Alan L. Rupe, Morrison & Hecker L.L.P., Wichita, KS, for Larry Buchanan, in his individual and official capacities.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

In this action, plaintiff Michael Medina brings claims under 42 U.S.C. § 1983, alleging that defendants violated his rights under the First and Fourteenth Amendments of the United States Constitution when defendant John D. Cragg, Sr. illegally sought information about plaintiff's status as a convicted felon and then published his findings on local public access cable television. Plaintiff also brings a supplemental state law claim for invasion of privacy. The matter is now before the court on separate motions for summary judgment by the City of Osawatomie (Doc. 39) and the individual defendants (Doc. 36). For the reasons set forth below, the court grants both motions.

## I. Facts [1]

This case relates another chapter in the unfortunate events surrounding a period of political upheaval in the City of Osawatomie, Kansas. *See also Cragg v. City of Osawatomie,* No. 95–2492–JWL, 1996 WL 707108 (D.Kan. Nov.8, 1996). In April, 1995, plaintiff was a first-time candidate for election to the city council in Osawatomie. Defendant John D. Cragg, Sr., was the Chief of Police and the Director of Public Safety in Osawatomie. Defendant Larry Buchanan was the City Manager.

On April 3, 1995, the day before the city council election, Frances Coroner, the incumbent city council member in plaintiff's ward, asked Mr. Buchanan whether convicted felons could run for city council. Mr. Buchanan did not know the answer. Ms. Coroner presented Mr. Buchanan with a list of "three or four" suspected felons who were running for various positions on the city council. Ms. Coroner was specifically concerned about plaintiff's candidacy. Mr. Buchanan asked Mr. Cragg to determine whether any of the individuals on the list were convicted felons.

Mr. Cragg contacted various agencies, including the Kansas Bureau of Investigation ("KBI") and the City of Paola, Kansas, and requested a background criminal information search. The KBI refused to run the search, but informed Mr. Cragg that Kansas law allows individuals not presently serving a sentence of incarceration or parole to run for public office. Paola informed Mr. Cragg that three candidates, including Mr. Medina, were ex-felons.[2] Mr. Cragg informed Mr. Buchanan that there was no legal impediment to plaintiff's candidacy.

Mr. Cragg grew angry upon learning that ex-felons could run for office. After a few hours, Mr. Cragg prepared a "warning" to be broadcast on the Osawatomie cable access channel. He sought approval to run the ad from Mr. Buchanan and Mr. Heckart, the mayor of Osawatomie. Both Mr. Buchanan and Mr. Heckart affirmatively indicated that they did not object. Mr. Buchanan suggested some minor changes. Later that evening, Mr. Cragg submitted the ad and the cable company aired it. The ad warned residents of Osawatomie that "three of the new candidates for city council are convicted felons" and urged residents to "be careful who you vote for." Mr. Cragg signed the ad. The ad did not disclose the names of any of the ex-felons.

## II. Summary Judgment Standard

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anthony v. United States,* 987 F.2d 670, 672 (10th Cir.1993). The court views the evidence and draws any inferences in a light most favorable to the party opposing summary judgment, but that party must identify sufficient evidence which would require submission of the case to a jury. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Hall v. Bellmon,* 935 F.2d 1106, 1111 (10th Cir. 1991). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Cone v. Longmont United Hosp. Ass'n,* 14 F.3d 526, 533 (10th Cir.1994) (citing *Anderson,* 477 U.S. at 249–50). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52.

## III. Federal Claims

Plaintiff claims the city and the individual defendants, in both their individual and official capacities, violated his First and Fourteenth Amendment rights to political association, including his right to be a candidate for

---

1. In accordance with the applicable summary judgment standard, the facts are uncontroverted or related in the light most favorable to the plaintiff.

2. See Cragg deposition at 80–81. Plaintiff has not properly set forth the source of Mr. Cragg's knowledge in the summary judgment record as required by D. Kan. R. 56.1. Nevertheless, the court, viewing the facts that *were* properly presented in the light most favorable to the plaintiff, assumes Mr. Cragg learned that Mr. Medina is an ex-felon from some improper source.

political office.[3] Defendants assert various defenses as set forth below.

### A. Official Capacity Claims

Plaintiff and defendants agree that plaintiff's suit for damages against the individual defendants in their official capacity should be dismissed. *See Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). Accordingly, the court grants summary judgment on the official capacity claims against Mr. Cragg and Mr. Buchanan.

### B. Under Color of Law

The city argues it is entitled to summary judgment because Mr. Cragg, according to the city, acted solely in his personal capacity and not under color of law when he placed the cable ad. The court disagrees. Municipal liability under § 1983 is predicated upon the unconstitutional enforcement of a municipal policy or custom that is the "moving force" behind plaintiff's injury. *See, e.g., Monell v. Department of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Although persons employed by municipalities may or may not act under color of state law, *see, e.g., Haines v. Fisher,* 82 F.3d 1503 (10th Cir.1996), municipalities, as instrumentalities of a state, always act under color of state law. *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) ("color of law" requirement of § 1983 and "state action" requirement of the Fourteenth Amendment are in all important respects identical). Thus, technically, the "under color of state law" inquiry is inapposite to municipal liability. *See Padilla v. d'Avis,* 580 F.Supp. 403, 406 (N.D.Ill.1984) (city may be liable as a state actor even though its agent did not act under color of state law); *cf. Garcia v. Salt Lake County,* 768 F.2d 303, 310 (10th Cir.1985) ("*Monell* does not require that a jury find an individual defendant liable before it can find a local governmental body liable."); *Id.* ("Although the acts or omissions of no one employee may violate an individual's constitutional rights, the combined acts or omissions of several employees

acting under a governmental policy or custom may violate an individual's constitutional rights."); *Hinton v. City of Elwood,* 997 F.2d 774, 782 (10th Cir.1993) (city may be liable even if individual defendant is entitled to qualified immunity where qualified immunity is based on finding that law was not "clearly established").

Of course, a city cannot act.but through its agents. *Cf. Los Angeles v. Heller,* 475 U.S. 796, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) (summary opinion) (city not liable when individual *defendant inflicted no constitutional harm* and only theory of municipal liability was that city policy authorized constitutional harm). However, Mr. Medina has presented ample evidence that city agents, acting in their official capacities, contributed to his alleged constitutional injury. Mr. Buchanan and Mr. Heckart, for example, were surely acting under color of state law when Mr. Cragg sought their approval to run the ad. The city concedes, moreover, that Mr. Cragg was acting in his official capacity when he sought Mr. Medina's criminal history records. The city is not entitled to summary judgment on this basis.

### C. Municipal Liability

The city also claims plaintiff has failed to adduce sufficient evidence that the city should be liable for plaintiff's alleged injuries. *See, e.g., Pembaur v. Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *Monell v. Department of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The court does not address the merits of this issue because the city did not advance it in its memorandum in support of summary judgment. Instead, the city raised the issue for the first time in its reply brief, after the plaintiff pointed out in his response brief that the city had *not* raised the issue.

D.Kan. R. 7.1(b) governs motion practice in this court. The rule permits parties to file a dispositive motion, a response to the mo-

---

3. Plaintiff and the defendants disagree about whether plaintiff is also asserting a claim for the deprivation of due process. Although plaintiff's complaint seems to allege a due process violation, his subsequent papers make clear his intention to assert his due process right only in the sense that the Fourteenth Amendment right to due process makes the First Amendment applicable to the states and their instrumentalities—not in the sense that his Fourteenth Amendment right to procedural or substantive due process was somehow deprived.

tion, and a reply by the movant. *Id.; Thurston v. Page,* 931 F.Supp. 765, 768 (D.Kan. 1996). Courts in this district have been reluctant to consider issues raised for the first time in a reply brief. *See Thurston,* 931 F.Supp. at 768 ("The court will not consider the new argument ... presented in defendant's reply brief when that issue was not raised in the initial motion for summary judgment") (citing *Glad v. Thomas County Nat'l Bank,* No. 87–1299–C, 1990 WL 171068 (D.Kan. Oct.10, 1990) (court will not consider new arguments and issues presented in a reply brief because plaintiff has not had an opportunity to respond)); *Mike v. Dymon, Inc.,* No. 95–2405–EEO, 1996 WL 427761, at *2 (D.Kan. July 25, 1996) ("In pursuit of fairness and proper notice, the court generally summarily denies or excludes all arguments and issues first raised in reply briefs.") (internal quotations omitted) (quoting *Wagher v. Guy's Foods, Inc.,* 765 F.Supp. 667, 671 (D.Kan.1991)).

The court will not address the municipal liability issue here because it does not believe plaintiff has had a fair opportunity to point the court's attention to evidence supporting municipal liability. This case is somewhat different from the cases cited above because the city did not technically raise the issue for the first time in its reply brief; plaintiff made negative reference to the issue in its response brief. Nevertheless, the plaintiff here had no opportunity to present evidence or argue the merits of the issue. Under the circumstances in this case, the court does not feel the plaintiff should be penalized for merely attempting to clarify which issues are *not* properly before the court.

### D. Constitutional Violation

The city and the individual defendants forcefully argue that plaintiff suffered no constitutional injury.[4] They believe the rights plaintiff asserts—the right to freedom of political association and the right to be a candidate—either do not exist, were not implicated, or were not violated. The court

4. The individual defendants couch their argument that no constitutional violation occurred within their broader claim of qualified immunity. *See Lawmaster v. Ward,* 125 F.3d 1341, 1347

agrees with defendants; plaintiff did not suffer a constitutional injury here.

#### 1. Level of Scrutiny

Plaintiff proposes a level of scrutiny gleaned from prototypical freedom of association cases. He believes the court should subject the defendants' conduct to strict scrutiny review because the conduct objectively chilled his associational rights. *See National Commodity and Barter Ass'n v. Archer,* 31 F.3d 1521, 1531 n. 4 (10th Cir. 1994) (*NCBA*). The court disagrees with plaintiff because plaintiff's associational rights were not implicated here in the same way as associational rights are implicated in prototypical freedom of association cases. Specifically, the court does not believe plaintiff has sufficiently identified a person or group with whom his right to associate was chilled.

The right to associate freely is not explicitly enumerated in the First Amendment; it has its modern roots in *NAACP v. Alabama,* 357 U.S. 449, 460, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). There, the Supreme Court held that an Alabama state court could not hold the NAACP in contempt for refusing to disclose its membership list when evidence indicated that such disclosure would have profound negative effects on NAACP members and the NAACP's efforts to recruit new members. *Id.* The Court held that "[i]t is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces [First Amendment] freedom of speech [by incorporation]." *Id.*

Courts refined the concept of free association over time, and the chilling/strict scrutiny test became the standard. In *NCBA,* 31 F.3d at 1528–31, for example, the Tenth Circuit held that an anti-IRS group alleged facts sufficient to survive a motion to dismiss a free association case when it alleged that government agents sought to oppress it. The government had allegedly raided NCBA

(10th Cir.1997) (individual state actors are entitled to qualified immunity if they can show, *inter alia,* that no constitutional violation occurred).

members' houses and sought membership lists in an attempt to intimidate NCBA members and prospective members. *Id.* at 1525–27. The Tenth Circuit reasoned that the NCBA was an *"association* for the advancement of beliefs and ideas," *Id.* at 1528 (emphasis added) (quoting *In re First Nat. Bank,* 701 F.2d 115, 117 (10th Cir.1983) (citing *NAACP v. Alabama,* 357 U.S. at 460)), and that, therefore, any government action that objectively chilled NCBA members from so associating would violate the First Amendment unless the action could survive strict scrutiny review. *Id.* at 1529–30, 1531 n. 4; *see also Laird v. Tatum,* 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972).

*NAACP v. Alabama* and *NCBA,* however, are unlike the case here because, unlike the NAACP or the NCBA, Mr. Medina is an individual. He is not an association for the advancement of beliefs and ideas, nor has he identified any person or group with whom defendants chilled him from associating. If he indeed has some associational right or some right to be a candidate in this context, the court does not believe such right should be accorded a status so deferential as to be subject to strict scrutiny review merely because defendants "chilled" it. *See Burdick v. Takushi,* 504 U.S. 428, 433, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992) ("the mere fact that a State's system 'creates barriers ... tending to limit the field of candidates from which voters might choose ... does not of itself compel close scrutiny' ") (quoting *Bullock v. Carter,* 405 U.S. 134, 143, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972) and *Anderson v. Celebrezze,* 460 U.S. 780, 788, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983)); *Thournir v. Meyer,* 909 F.2d 408, 409 (10th Cir.1990).

Plaintiff's argument to the contrary centers around *Patrick v. City of Overland Park,* 937 F.Supp. 1491 (D.Kan.1996), a case which relies on *NCBA.* In *Patrick,* the court held that plaintiff Kerry Patrick's allegation that defendants' conduct "chilled" his associational rights was sufficient to survive a motion to dismiss. *Id.* at 1498 (citing *NCBA,* 31 F.3d at 1531 n. 4). The defendants in *Patrick* allegedly suspected Mr. Patrick would run against the incumbent Republican in a primary election for the United States House

of Representatives. *Patrick,* 937 F.Supp. at 1494. The defendants allegedly masterminded a search of confidential official records, including a complete criminal investigation, against Mr. Patrick. *Id.* Mr. Patrick alleged that the defendants sought to damage him in his potential political campaign. *Id.* The investigation allegedly uncovered a "long closed" and "highly sensitive, non-public" file which contained private information about Mr. Patrick's family. *Id.* at 1495. Notably absent from the *Patrick* case was any allegation or indication of the individual or group with whom the defendants' actions chilled Mr. Patrick from associating. Although defendants' alleged actions undoubtedly chilled Mr. Patrick, *see id.* at 1498 (citing *NCBA,* 31 F.3d at 1531 n. 4), there was no indication they chilled his *right to associate.* Nevertheless, defendants' motions to dismiss were denied. *Patrick,* 937 F.Supp. at 1498.

Although *Patrick* supports plaintiff's view of the governing level of scrutiny and although the facts of *Patrick* are highly similar to this case, *Patrick* is unhelpful to plaintiff. *Patrick* was decided on a motion to dismiss— a much less stringent standard than plaintiff must meet here to survive summary judgment. The court's decision apparently relied heavily on this distinction:

> [Plaintiff] is not at this time required, as defendants seem to argue, to specify individuals with whom he was prevented from associating.... [His] allegations are enough to prevail against defendants' motions to dismiss and entitle plaintiff to conduct discovery. If, after having had a chance to develop the facts, he cannot prove any set of facts that would supply a basis for the allegations in his complaint, defendants may prevail on summary judgment motions.

*Id.* Plaintiff here has been unable to set forth any facts justifying the basis for a traditional freedom of association claim. Moreover, to the extent *Patrick* holds that a plaintiff may go forward on a claim for violation of his or her First Amendment right of association by claiming such right was chilled without so much as tacitly pointing to any person or group with whom he or she was chilled from associating, this court respectfully disagrees

with it. Such a conclusion simply does not follow from *NCBA* or any of the other cases cited in *Patrick,* and is contrary to this court's reading of established Supreme Court and Tenth Circuit caselaw. *See Burdick,* 504 U.S. at 434; *Anderson,* 460 U.S. at 789; *Thournir,* 909 F.2d at 411 ("Because [the plaintiff] was truly unaffiliated ... we believe there is no legal substance to her claim of denial of associational rights.")

The other cases plaintiff cites are inapposite as well. For example, plaintiff argues that *Gardetto v. Mason,* 100 F.3d 803 (10th Cir.1996) supports his position. *Gardetto,* however, involved a public employee's First Amendment speech retaliation claim under *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). *Gardetto,* 100 F.3d at 811. It has no bearing on plaintiff here. Similarly, *Riggs v. City of Albuquerque,* 916 F.2d 582 (10th Cir.1990), is inapposite. *Riggs* dealt with the question of standing—that is, whether plaintiffs adequately alleged an injury in fact when they alleged that they were "chilled" by state conduct. *Id.* at 584. There is no issue of standing here; plaintiff has adequately alleged an injury. The issue is what level of scrutiny the court should apply to determine whether Mr. Medina's asserted injury rose to a constitutional level. *Mazza v. Hendrick Hudson Central School Dist.,* 942 F.Supp. 187 (S.D.N.Y.1996), *Lieberman v. Reisman,* 857 F.2d 896 (2d Cir.1988), and *Chandler v. Miller,* 520 U.S. 305, 117 S.Ct. 1295, 137 L.Ed.2d 513 (1997) are also inapposite. *Mazza* is a free speech case. 942 F.Supp. at 190. *Lieberman* is a public employment and political patronage case. 857 F.2d at 898. *Chandler* involves a Fourth Amendment search of political candidates. 520 U.S. at ——, 117 S.Ct. at 1298.

■ In First and Fourteenth Amendment cases involving a state's encroachment of an asserted candidate or voter right, the court believes that "a more flexible standard [should] appl[y]." *Burdick,* 504 U.S. at 434. A court considering a challenge to a state election law must weigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against "the precise interests put forward by the State as justifications for the burden imposed by its rule," taking into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights." [*Anderson,* 460 U.S.] at 789; *Tashjian [v. Republican Party of Conn.,* 479 U.S. 208, 213–14, 107 S.Ct. 544, 93 L.Ed.2d 514 (1986)].

Under this standard, the rigorousness of our inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights. Thus, as we have recognized when those rights are subjected to "severe" restrictions, the regulation must be "narrowly drawn to advance a state interest of compelling importance." *Norman v. Reed,* 502 U.S. 279, 289, 112 S.Ct. 698, 116 L.Ed.2d 711 (1992). But when a state election law provision imposes only "reasonable, non-discriminatory restrictions" upon the First and Fourteenth Amendment rights of voters, "the State's important regulatory interests are generally sufficient to justify" the restrictions. *Anderson,* 460 U.S. at 788, 788–89 n. 9.

*Burdick,* 504 U.S. at 434. The court believes the *Burdick* formulation requires an inquiry approximating strict scrutiny analysis when a state subjects asserted First and Fourteenth Amendment rights to severe restrictions. The *Burdick* formulation requires an inquiry approximating intermediate scrutiny when a state subjects asserted First and Fourteenth Amendment rights to reasonable, nondiscriminatory restrictions. By extension of this reasoning, the court believes it appropriate to engage in an inquiry approximating rational basis review when a state subjects asserted First and Fourteenth Amendment rights only to minimal impediments that do not rise to the level of "restrictions." *Cf. Anderson,* 460 U.S. at 789–80 ("Only after weighing all of these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional"). In the court's view, the only reason *Burdick*'s language does not expressly interpret the *Anderson* balancing test in this fashion is

that the restrictions on voting in *Burdick* were by all accounts substantial. *See Burdick*, 504 U.S. at 431–32 (complete ban on write-in voting).

The Tenth Circuit's *Thournir* decision convinces the court that this flexible standard is the correct one here. In *Thournir*, a candidate challenged Colorado's law requiring unaffiliated candidates to register themselves as an unaffiliated voter for at least one year before filing a nominating petition for elective office. *Id.* at 409. The candidate sought to assert the associational rights of members of the Socialist Workers Party (of which she was formerly a member) and she sought to assert her individual right to be a candidate. *Id.* at 410. The court refused to recognize any associational rights because "Ms. Thournir was truly unaffiliated in the eyes of [Colorado] law." *Id.* at 411. The court instead focused on her individual right to be a candidate, and evaluated the state's alleged infringement of that right using the flexible standard laid out in *Anderson*.[5] *Id.* Like Ms. Thournir, Mr. Medina asserts associational rights and his right to be a candidate. He has identified no person with whom he sought to associate and therefore he was "truly unaffiliated." Accordingly, the court will focus on Mr. Medina's individual right to be a candidate and evaluate the defendants' alleged infringement of that right using the flexible standard.

### 2. The Flexible Standard

█ The court believes the flexible standard promulgated in *Anderson* and *Burdick* compels a finding that the defendants did not violate Mr. Medina's asserted constitutional rights. The court evaluates first "[t]he character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate." *Burdick*, 504 U.S. at 434. The court concludes that plaintiff's injury was minimal, at best.

A plaintiff's injury is diminished where, as here, he or she asserts the rights of a candidate only. Normally, "the rights of voters and the rights of candidates do not lend themselves to neat separation." *Bullock*, 405

U.S. at 143. Here, however, Mr. Medina has asserted only his rights as a candidate. He has not attempted to assert his rights as a voter nor has he attempted to assert the rights of those who may have chosen to associate to express their support for him. The right to be a candidate simply carries less significance. *See Thournir*, 909 F.2d at 410–11 (evaluating associational right to vote separately from individual right to be a candidate and noting that right to be a candidate is diminished when the accompanying right to vote is removed from the calculus); *Bates v. Jones*, 131 F.3d 843, 850–54 (9th Cir.1997) (O'Scannlain, J., concurring with en banc decision) (discussing interplay between rights of voters and asserted rights of candidates and concluding that asserted right to be a candidate is an improper overextension of the right to vote and therefore garners no special significance), *petition for cert. filed*, 66 U.S.L.W. —— (U.S. Jan. 13, 1998) (No. 97–1173); *Speer v. City of Oregon*, 847 F.2d 310, 312 (6th Cir.1988) ("The right to vote generally compels much stricter scrutiny as a fundamental right than does the right to offer one's self as a candidate for public office."); *see also Burdick*, 504 U.S. at 438–39 (resting almost exclusively on the rights of *voters*, not candidates); *Anderson*, 460 U.S. at 806 ("our primary concern is not the interest of candidate Anderson, but rather, the interests of the voters who chose to associate together to express their support for Anderson's candidacy and the views he espoused."); *cf. Clements v. Fashing*, 457 U.S. 957, 978 n. 2, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982) (Brennan, J., dissenting) ("Although we have never defined candidacy as a fundamental right [for equal protection purposes,] we have clearly recognized that restrictions on candidacy impinge on First Amendment rights of *candidates and voters*." (emphasis added) (citations omitted)).

Moreover, Mr. Medina's injury was relatively minor. The defendants did not prevent him from running for office altogether; they merely expressed their disapproval of him. *Cf. Thournir*, 909 F.2d at 411 (ballot access denied by state law); *Anderson*, 460

---

**5.** The Supreme Court clarified the *Anderson* standard in *Burdick*, but the Tenth Circuit did not

have the benefit of the *Burdick* decision when it rendered *Thournir*.

U.S. at 782 (same). There is no indication in the papers before the court that defendants' conduct induced even one person not to vote for Mr. Medina. Anyone who wanted to learn legitimately whether Mr. Medina was in fact an ex-felon could have done so using only marginal effort by simply examining published accounts in old issues of the town newspaper. Political candidates in today's society, for good or for ill, should expect information about their past behavior to come to light, and Mr. Medina had to recognize the possibility that his status as an ex-felon would become a campaign issue.

*Thournir* directs the court to look also to "the nature and impact" of the defendants' actions on voters in evaluating the asserted injury. *Thournir*, 909 F.2d at 411 (quoting *Bullock*, 405 U.S. at 142–43). As the court has already recognized, Mr. Medina has not attempted to assert the rights of voters, so the extent of the court's inquiry is thereby limited. Moreover, he has not come forward with any evidence of the nature and impact of the defendants' actions on voters, other than hearsay statements relating that some people had seen Mr. Cragg's cable ad. As in *Thournir*, "it becomes difficult for [the court] to see how [the defendants' actions] had a significant impact ... upon the ... voters .... [The plaintiff's] candidacy, without a legally recognizable constituency, can be accorded no special status under *Bullock.*" *Thournir*, 909 F.2d at 411. Accordingly, the court concludes that Mr. Medina's asserted injury is minimal, at best.

The court next evaluates "the precise interests put forward by the State as justifications for the burden imposed [by its actions,] taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights." *Burdick*, 504 U.S. at 434. The court concludes that the state interests the defendants assert are both important and legitimate. Enforcing the interests, moreover, required a direct burden on plaintiff's asserted rights.

The defendants justify their actions by contending that they were motivated by a desire to preclude ex-felons from obtaining office. At first, this desire was based on the belief that it was illegal for ex-felons to ob-

tain office. Later, the desire was based on the belief that ex-felons *should not* obtain office, even if they could lawfully do so. For the moment, the court puts to one side plaintiff's argument that defendants were also motivated by a desire to hurt him politically and a desire to protect Ms. Coroner, the incumbent candidate.

The defendants' asserted governmental interest in precluding ex-felons from obtaining office is both important and legitimate. The Supreme Court has long recognized a state's right to preclude ex-felons from voting. In *Richardson v. Ramirez*, 418 U.S. 24, 54, 94 S.Ct. 2655, 41 L.Ed.2d 551 (1974), the Court held that California did not violate the equal protection clause when it disenfranchised ex-felons. The Fourteenth Amendment, held the Court, grants states an affirmative sanction to disenfranchise ex-felons. *Id.*

This court believes the holding in *Richardson* allows states not only to disenfranchise ex-felons, but also to preclude their candidacy for public office. The court has already recognized that voting rights carry more significance than candidacy rights. If states may constitutionally impinge on an ex-felon's right to vote, states may certainly impinge on his or her right to hold office. A significant number of states prohibit ex-felons from running for public office, *see, e.g.,* Steven B. Snyder, *Let My People Run: The Rights of Voters and Candidates Under State Laws Barring Felons From Holding Elective Office*, 4 J.L. & Pol. 543, 575–77 (1988) (listing state statutes and constitutional provisions which disqualify ex-felons from holding public office), and the court is not aware of any decision holding such a law unconstitutional. *But see Franklin v. Murphy*, 745 F.2d 1221, 1231 (9th Cir.1984) (holding that felon's First Amendment claim of right to run for office was not legally frivolous under *Richardson*, but refusing to decide merits of issue).

Mr. Medina's *First Amendment* challenge to the defendants' actions does not change matters. *Richardson*, of course, challenged California's disenfranchisement law on Fourteenth Amendment equal protection clause grounds; it did not address whether the law could withstand a First Amendment challenge. The reasoning of the Rhode Island

**1278**

Supreme Court in *Gelch v. State Bd. of Elections*, 482 A.2d 1204, 1207–08 (R.I.1984), however, convinces the court that the outcome should be no different here:

> Cianci[, a felon,] claimed that his First Amendment rights would be violated by denying him access to the ballot .... The disqualification of a convicted felon by a state[, however,] is specifically allowed under section 2 of the Fourteenth Amendment. The First Amendment, only applicable to the states through the Fourteenth Amendment, *Gitlow v. New York*, 268 U.S. 652, 666, 45 S.Ct. 625, 69 L.Ed. 1138 (1925), therefore gives Cianci no further protection than that established in the Fourteenth Amendment. We find, therefore, that his claim of a First Amendment violation is without merit.

The Kansas legislature's decision not to prohibit ex-felons from holding office does not change matters, either. The defendants here sought to do no more than any state may validly do—impede ex-felons from obtaining public office. Even if the defendants' asserted justification was contrary to *state law*, and the court expresses no opinion concerning whether it was, the asserted justification is recognized as important and legitimate under the *federal constitution*. Accordingly, Mr. Medina may not rely on Kansas law to invalidate the defendants' asserted justification. *See Baker v. McCollan*, 443 U.S. 137, 142, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) (mere violation of state law does not provide basis for § 1983 claim); *Paul v. Davis*, 424 U.S. 693, 699–700, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) (same).[6] Defendants had an important and legitimate interest under the constitution to limit the candidacy of ex-felons.

"[T]aking into consideration the extent to which [that] interest[] make[s] it necessary to burden the plaintiff's rights," *Burdick*, 504 U.S. at 434, the court concludes that defendants' interest directly conflicts with plaintiff's desire to be a candidate. Accordingly, the court concludes that defendants could only assert their interest by somehow burdening plaintiff's asserted rights.

Weighing the necessary factors, the court concludes that the defendants did not violate Mr. Medina's First Amendment right of association or his right to be a candidate. The court has concluded that the defendants' action here imposed, at most, a minimal injury to Mr. Medina's asserted rights. Against this asserted injury, the court weighs the defendants' important, legitimate, and explicitly recognized constitutional interest in impeding the candidacy of ex-felons. The defendants' constitutionally recognized interest is more than sufficient to justify the minimal intrusion on Mr. Medina's asserted rights.

Given the court's finding, Mr. Medina's claim that defendants were motivated primarily by a desire to protect Ms. Coroner's incumbency becomes essentially irrelevant. Because Mr. Medina's injury was so minor, the court's inquiry into the defendants' actions approximates rational basis review. *See supra.* In the rational basis arena,

> [a]s long as the [defendants] can present at least one plausible, arguably legitimate [state] purpose for [their actions], summary judgment ... is appropriate unless [the plaintiff] can demonstrate that the [defendants] could not possibly have relied on that purpose.... [The plaintiff's] evidence of improper motive does not create a genuine issue of material fact sufficient to survive summary judgment because the actual purposes of [the defendants' actions] are not relevant to a rational basis ... inquiry.

*Haves v. City of Miami*, 52 F.3d 918, 923 (11th Cir.1995) (equal protection case); *see also FCC v. Beach Communications, Inc.*, 508 U.S. 307, 315, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993) (rational basis review, at least in equal protection arena, makes it "entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature."); *Nordlinger v. Hahn*, 505 U.S. 1, 15, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992) (constitution, at least in equal protection context, "does not demand for purposes of ra-

---

6. For the same reasons, Mr. Medina may not rely on his assertion that defendants' search of his criminal history records violated state law in making out a § 1983 claim.

tional basis review that a legislature *or governing decisionmaker* actually articulate at any time the purpose or rationale supporting its classification."). The court does not believe the rule should be any different here, in a First Amendment case approximating rational basis review. *See Norman v. Reed,* 502 U.S. 279, 288 n. 8, 112 S.Ct. 698, 116 L.Ed.2d 711 (1992) ("we base our conclusions directly on the First and Fourteenth Amendments and do not engage in a separate Equal Protection Clause analysis. We rely, however, on the analysis in a number of our prior election cases resting on the Equal Protection Clause of the Fourteenth Amendment.") (quoting *Anderson,* 460 U.S. at 786–87 n. 7). At any rate, the defendants have far exceeded their rational basis burden. The defendants have articulated and asserted an *important and specifically recognized* (not merely legitimate) state purpose for their actions and *adduced evidence* that their actions were in fact so motivated. The court has found that defendants' asserted justification passes constitutional muster. Accordingly, defendants are entitled to summary judgment on plaintiff's § 1983 claims.[7]

## IV. State Law Claims

Plaintiff's only remaining claims are for the state law tort of invasion of privacy. The court's subject matter jurisdiction over this state law claim is predicated on supplemental jurisdiction under 28 U.S.C. § 1367(a). There is no diversity of citizenship. Because the court has dismissed plaintiff's federal claims, those claims over which it had original jurisdiction, the court must determine whether to exercise its supplemental jurisdiction over plaintiff's remaining state law claim.

▪ Whether to exercise supplemental jurisdiction is within the district court's sound discretion. *See Brinkman v. State Dept. of Corrections,* 863 F.Supp. 1479, 1488 (D.Kan.1994). The district court is expressly authorized to decline to exercise supplemental jurisdiction over a state law claim if the court has dismissed all claims over which it

had original jurisdiction. 28 U.S.C. § 1367(c)(3). Discretion to try state law claims in the absence of any federal claims should only be exercised in those cases in which, given the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction. *Thatcher Enterprises v. Cache Corp.,* 902 F.2d 1472, 1478 (10th Cir.1990). Generally, when federal claims are eliminated before trial, the balance of factors to be considered will point towards declining to exercise jurisdiction over the remaining state law claims. *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). "Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." *Thatcher Enterprises,* 902 F.2d at 1478.

The court finds no compelling reason to exercise its supplemental jurisdiction and determines in the interest of comity and federalism that plaintiff's remaining state law claim be heard in state court. *See Boone v. Carlsbad Bancorp., Inc.,* 972 F.2d 1545, 1559 (10th Cir.1992) (district court did not abuse its discretion in declining to exercise supplemental jurisdiction over pendant state law claims where it dismissed federal securities and RICO claims before trial); *Urban v. King,* 834 F.Supp. 1328, 1334 (D.Kan.1993) (court granted summary judgment on plaintiff's federal claims and declined to exercise jurisdiction over state law claims); *Dow v. Terramara, Inc.,* 835 F.Supp. 1299 (D.Kan. 1993) (same); *Taliaferro v. Voth,* 774 F.Supp. 1326, 1333 (D.Kan.1991) (same); *see also Bonger v. American Water Works,* 789 F.Supp. 1102, 1107–08 (D.Colo.1992) (court declined to exercise jurisdiction over state statutory claim where it granted summary judgment in favor of defendant on plaintiff's Title VII claim). Plaintiff's state law tort claim for invasion of privacy is therefore dismissed without prejudice.

**IT IS THEREFORE ORDERED BY THE COURT** that defendants' motions for

---

**7.** It is important to note that plaintiff has not raised an equal protection issue here. Thus, the court has not attempted to assess whether the defendants violated Mr. Medina's constitutional rights by somehow treating him differently than similarly situated individuals. The court expresses no opinion concerning the merits of such a claim.

summary judgment (Docs.36, 39) are granted.

**IT IS FURTHER ORDERED** that plaintiff's state law tort claim for invasion of privacy is dismissed without prejudice.

**IT IS SO ORDERED.**